Anthony Charles **LEADER**, Petitioner,

v.

Scott **BLACKMAN**, Acting District Director, Immigration and Naturalization Service, New York District, Respondent.

No. 90 Civ. 1218 (GLG).

United States District Court, S.D. New York.

Aug. 8, 1990.

502

Carolyn S. Goldfarb, New York City, for petitioner; Carolyn S. Goldfarb, of counsel.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, for respondent; Timothy MacFall, Sp. Asst. U.S. Atty., of counsel.

GOETTEL, District Judge.

In this action, we are presented with what is apparently the first challenge in this circuit, and one of only a couple of challenges nationwide, to the constitutionality of section 242(a)(2) of the Immigration and Nationality Act of 1952 ("INA"), as amended. 8 U.S.C. § 1252(a)(2) (1988). This provision provides for the detainment of an alien who has been convicted of an "aggravated felony," as defined by the INA, without bail pending a determination of deportability.

## I. FACTS

Petitioner, Anthony Charles Leader, is a thirty year old citizen of Bermuda who has been a lawful permanent resident of the United States since December 16, 1976.[1] On April 6, 1989, petitioner was arrested by the New York State Police for the sale of

1. We are told that petitioner's father and paternal grandparents are also lawful permanent residents of the United States. In addition, petitioner is allegedly the father of a citizen child who was born while petitioner was incarcerated.

cocaine. Following indictment, on April 13, 1989 petitioner pled guilty before a County Judge in Orange County, New York to attempted criminal sale of a controlled substance in the third degree, in violation of New York's Penal Law. *See* N.Y.Penal Law §§ 110, 220.39 (McKinney 1987 & 1989). Petitioner was sentenced on May 18, 1989 to one year in prison.

On November 21, 1989, a warrant of arrest was issued by the Immigration and Naturalization Service ("INS"), charging that petitioner was deportable pursuant to the INA because he had been convicted of an aggravated felony, as well as a crime relating to a controlled substance. 8 U.S.C. § 1251(a)(4)(B), (a)(11) (1988).[2] On December 1, petitioner completed his state sentence and was thereafter taken into custody by the INS. On December 4, 1989, petitioner was informed that he was being held without bail pursuant to 8 C.F.R. § 242.2 (1990) pending a final determination of deportability.[3]

Thereafter, petitioner sought a redetermination of his bail status before an Immigration Judge. Specifically, he argued that his conviction pursuant to New York State Penal Law was not covered by section 242(a)(2) of the INA. Immigration Judge Howard Cohen ruled against petitioner on December 11, 1989. Petitioner appealed that decision to the Board of Immigration Appeals ("BIA"), which affirmed Judge Cohen's decision on April 19, 1990. Meanwhile, the deportation hearing was proceeding before Judge Cohen and on May 17, 1990, Judge Cohen concluded that petition-er should be deported.[4] Petitioner's appeal of this ruling to the BIA is currently pending.

Presently before this court is a Petition for a Writ of Habeas Corpus, and petitioner's application for declaratory and injunctive relief. Petitioner argues that his state conviction is not covered by the INA's definition of an "aggravated felony" and, therefore, he should be released from INS custody upon the posting of a reasonable bond. Alternatively, petitioner claims that even if his conviction fits within the term's meaning, the statute is unconstitutional to the extent it provides that aliens convicted of aggravated felonies must be held without bail. At a minimum, petitioner contends that a hearing is necessary to ascertain his individual suitability to being released on bail.

## II. DISCUSSION

### A. *Applicability of Statute*

■ Section 242(a)(2) of the INA provides that "[t]he Attorney General shall take into custody any alien convicted of an aggravated felony upon completion of the alien's sentence for such conviction.... [T]he Attorney General shall not release such felon from custody." 8 U.S.C. § 1252(a)(2) (1988). Aggravated felonies include "murder, any drug trafficking crime as defined in section 924(c)(2) of title 18, or any illicit trafficking in any firearms or destructive devices as defined in section 921 of such title, or any attempt or conspiracy to commit any such act, committed

**2.** Section 241(a) of the INA provides, *inter alia,* that:

> Any alien in the United States ... shall, upon the order of the Attorney General, be deported who—
> (4)(B) is convicted of an aggravated felony at any time after entry;
> (11) ... at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21)....

8 U.S.C. § 1251(a) (1988).

**3.** Regulation 242.2 involves the apprehension, custody, and detention of aliens. While the December 4 notice referred to regulation 242.2, the statutory authority for such detention was section 242(a)(2) of the INA, which permits the Attorney General to hold an alien who has been convicted of an aggravated felony without bail pending a final determination of deportability. 8 U.S.C. § 1252(a)(2) (1988).

**4.** We have not reviewed Judge Cohen's decision regarding petitioner's deportability since it is not relevant to the issues before us. However, we were informed that petitioner did not contest whether he was properly deportable under the INA, but instead, sought a discretionary stay from deportation based on his length of residence in the United States. *See* 8 U.S.C. § 1254 (1988).

within the United States." 8 U.S.C. § 1101(a)(43) (1988). The relevant aspect of this section is the reference to a drug trafficking crime as defined in section 924(c)(2) of title 18, which includes "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C.App. 1901 et seq.)." 18 U.S.C. § 924(c)(2) (1988).

This definition of a drug trafficking crime provides the initial basis for petitioner's claim that he is being illegally held without bail. Specifically, petitioner claims that since only federal crimes are listed under the general rubric of drug trafficking crimes, his conviction under New York law does not put section 242(a)(2) into play. Petitioner contends that when Congress intends to make state convictions applicable to a particular federal statute, they can, and in fact have, done so expressly.

We disagree with petitioner's contentions and are persuaded by both the findings of Immigration Judge Cohen and the Board of Immigration Appeals on this very issue. The statute refers to crimes "punishable under" the Controlled Substances Act, as well as two other federal statutes. If Congress had meant to limit the definition of a drug trafficking crime to *convictions under* the Controlled Substances Act, it would have included such language. In fact, prior to the amendment of section 924(c)(2) pursuant to the Anti–Drug Abuse Act of 1988, a drug trafficking crime was defined as "any felony violation of Federal law involving the distribution, manufacture, or importation of any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))." 18 U.S.C. § 924(c)(2) (amended 1988). Therefore, a violation of federal law was required prior to the 1988 amendment. We, like Judge Cohen, do not believe the change in language from a "violation of federal law" to crimes "punishable under" federal law is insignificant and find that Congress' clear intent in redefining this term was to include state convictions that could have

been brought under federal law if federal authorities had been involved in prosecuting the crimes charged. *In re Leader*, No. A–35–24B–666 (Dec. 11, 1989) (Cohen, Immigration Judge) (bench decision); *see In re Barrett*, No. A37–213–802, slip op. at 5–9 (BIA Nov. 7, 1989). The Anti–Drug Abuse Act was targeted at the pervasive drug problem existing in our country. To suggest that only a federal conviction would subject an alien to being held without bail under section 242(a)(2) of the INA pending a resolution of the deportability issue would vitiate the purpose behind the statute. *Id.*, slip op. at 6. While it is certainly not beyond the pale for Congress to enact such an inconsistent statute, we are convinced that Congress intended the statute to apply to both federal and state convictions.

■ The next question which must be addressed, therefore, is whether petitioner's state law conviction was "punishable under" the Controlled Substances Act.[5] Petitioner was convicted, by virtue of his plea agreement, of attempted criminal sale of a controlled substance in the third degree. "A person is guilty of [criminal sale of a controlled substance] when he knowingly and unlawfully sells a narcotic drug," N.Y.Penal Law § 220.39 (McKinney 1989), and cocaine is a narcotic drug as defined by New York's Penal Law. Turning to the federal Controlled Substances Act, section 841(a)(1) of title 21 provides that "it shall be unlawful for any person knowingly or intentionally to distribute or dispense a controlled substance." 21 U.S.C. § 841(a)(1) (1988). Cocaine is also a controlled substance under this Act. 21 U.S.C. § 812(c) (1988). Clearly, if petitioner was convicted under section 220.39 of New York's Penal Law, he also could have been punished under the federal Controlled Substances Act. If anything, New York's law is more restrictive than the federal statute since it requires an actual sale while the federal statute considers distribution or dispensing to be sufficient criminal behavior. *In re Leader*, No. A–35–24B–666 (Dec. 11, 1989)

---

5. Judge Cohen concluded that it was and his ruling was affirmed by the BIA.

(Cohen, Immigration Judge) (bench decision).

The remaining question on this issue is whether petitioner's state conviction on *attempted* sale of a narcotic drug is also an aggravated felony under the INA. This question is easily resolved since the INA expressly states that an aggravated felony includes any "attempt" to commit a crime punishable under, *inter alia,* section 924(c)(2) of the Controlled Substances Act. Thus, based on this language and our previous determination that petitioner's state conviction was punishable under the Controlled Substances Act, we find that petitioner was convicted of an aggravated felony and, therefore, is properly subject to section 242(a)(2) of the INA. *See Gomez-Brito v. INS,* No. 90 Civ. 3890, 1990 WL 102200 (S.D.N.Y. July 11, 1990) (Lasker, J.) (available on Westlaw) (concluding that New York State conviction based on guilty plea to attempted sale of a controlled substance implicated section 242(a)(2)).[6]

### B. *Constitutionality of Statute*

Having determined that the statute upon which petitioner is being held without bail is applicable in this case, we must now turn to petitioner's assertion that the statute is unconstitutional. Petitioner contends that his rights to equal protection, substantive and procedural due process, and freedom from the imposition of excessive bail have been violated.

### 1. Equal Protection

Petitioner alleges that section 242(a)(2) of the INA violates his equal protection rights.[7] Petitioner argues that the two classes which the statute has created consist of individuals who have committed aggravated felonies as defined by the statute and those who have committed other serious felonies that are not characterized by the statute as aggravated. Implicitly, petitioner also seems to suggest an equal protection violation because of the unequal treatment afforded aliens, as compared to United States citizens.

 The correct standard of review first must be established in order to determine whether petitioner's equal protection rights have been violated. Petitioner argues that the correct standard is one of strict scrutiny because of petitioner's status as an alien.[8] It is well settled that resident aliens, like permanent citizens, must be treated consistently with the equal protection and due process clauses of the Constitution. *See Plyler v. Doe,* 457 U.S. 202, 210, 102 S.Ct. 2382, 2391, 72 L.Ed.2d 786 (1982); *Yick Wo v. Hopkins,* 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220 (1886); *see also Noel v. Chapman,* 508 F.2d 1023, 1028 (2d Cir.) (applying equal protection guarantee to deportation proceedings), *cert. denied,* 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975). Moreover, "classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny. Aliens as a class are a prime example of a 'discrete and insular' minority for whom such heightened judicial solicitude is appropriate." *Graham v. Richardson,* 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971) (quoting *United States v. Carolene Prods. Co.,* 304 U.S. 144, 152–53 n. 4, 58 S.Ct. 778, 783–84 n. 4, 82 L.Ed. 1234 (1938)). Nonetheless,

[w]hen legally admitted, [aliens] have come at the Nation's invitation, as visitors or permanent residents, to share with us the opportunities and satisfactions of our land.... So long, however,

---

6. While Judge Lasker's opinion in *Gomez-Brito* recognized the applicability of this provision of the INA to the facts presented, it appears from the opinion that no constitutional challenge to the section had been raised.

7. Although only the fourteenth amendment has an equal protection clause, and this amendment refers to actions by a state, the Supreme Court has recognized that any classification that would violate the equal protection clause would also violate the fifth amendment's due process

clause, which relates to actions by the federal government. *See Johnson v. Robison,* 415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 1164 n. 4, 39 L.Ed.2d 389 (1974).

8. Alternatively, petitioner argues that if strict scrutiny is inapplicable, an intermediate standard of review must be applied. For reasons which will be discussed, neither strict nor intermediate scrutiny is appropriate.

as aliens fail to obtain and maintain citizenship by naturalization, they remain subject to the plenary power of Congress to expel them under the sovereign right to determine what noncitizens shall be permitted to remain within our borders. *Carlson v. Landon,* 342 U.S. 524, 534, 72 S.Ct. 525, 531, 96 L.Ed. 547 (1952). Since it is the business of the political branches to regulate the conditions of entry and residence of aliens, the Supreme Court is reluctant to question the exercise of congressional judgment concerning aliens. *Mathews v. Diaz,* 426 U.S. 67, 84, 96 S.Ct. 1883, 1893, 48 L.Ed.2d 478 (1976). Thus, "the Court has adopted a stance of minimal scrutiny respecting federal regulations that contain alienage-based classifications," *United States v. Duggan,* 743 F.2d 59, 76 (2d Cir.1984) (citing *Mathews,* 426 U.S. at 78–81, 96 S.Ct. at 1890–92), and a federal statute relating to the conditions of an alien's residence in, or expulsion from, the United States will withstand constitutional challenge if there is a rational basis for its enactment. *See Azizi v. Thornburgh,* 908 F.2d 1130, 1133 (2d Cir.1990); *Francis v. INS,* 532 F.2d 268, 272–73 (2d Cir.1976); *Noel,* 508 F.2d at 1028–29. In addition, with respect to petitioner's argument regarding classifications based on the crime committed, this characterization is established by the severity of the specific crime, not one's membership in a particular protected class, which is the reason behind heightened scrutiny in certain instances. Again, only a rational basis for the statute need exist.

■ Under the minimal scrutiny test, distinctions between different classes " 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " *Francis,* 532 F.2d at 272 (quoting *Stanton v. Stanton,* 421 U.S. 7, 14, 95 S.Ct. 1373, 1377, 43 L.Ed.2d 688 (1975); *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed.

989 (1920)). No irrational or capricious distinctions may be made between groups. Petitioner argues that it is irrational for the government to treat drug trafficking as an aggravated felony while other more dangerous felonies, like armed robbery, kidnapping, rape, and arson, are not. Although aliens convicted of these other non-aggravated felonies possibly may be deported, they remain eligible for bail pending a determination of deportability.

To determine whether the aggravated felony classification survives minimal scrutiny and is not arbitrary or unreasonable on its face, we must look to the purpose behind the Anti–Drug Abuse Act of 1988, which is the Act through which section 242(a)(2) of the INA was implemented.[9] At the time of this Act's passage, Congress was concerned, as it still is today, about the severe drug problem in our country. The Act adopted stricter means of combatting the drug epidemic than were previously available. One such measure was the inclusion of drug trafficking crimes within the definition of aggravated felonies. Congress apparently determined that someone convicted of drug trafficking posed a serious risk to society and should not be released on bail. Based on these concerns, it is not irrational to treat drug trafficking crimes as aggravated felonies. *Cf. Schall v. Martin,* 467 U.S. 253, 264, 104 S.Ct. 2403, 2410, 81 L.Ed.2d 207 (1984) (there exists a "legitimate and compelling ... interest in protecting the community from crime"). The fact that petitioner considers other felonies to be more serious than drug trafficking does not mean that Congress cannot rationally conclude otherwise. Classifying drug trafficking as an aggravated felony was a rational way of attempting to combat a serious and compelling national problem. Therefore, section 242(a)(2) does not violate petitioner's equal protection rights.

### 2. Substantive and Procedural Due Process

Petitioner also claims that his substantive and procedural due process rights have

---

9. We note that no House or Senate Report was submitted with the Anti–Drug Abuse Act of 1988. *See* 1988 U.S.Code Cong. & Admin.News 5937.

been violated. Petitioner contends that mandatory civil post-conviction detention of permanent resident aliens is unconstitutional for individuals who have served their prison sentences and are eligible for discretionary relief from deportation. Petitioner further asserts that indefinite detention without showing that petitioner is likely to flee or poses a threat to the community is unconscionable and a further violation of his rights.[10]

In discussing the due process clause of the fifth amendment, the Supreme Court has stated that substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987) (quoting *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952); *Palko v. Connecticut*, 302 U.S. 319, 325–26, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)). This issue has been carved into a two-step inquiry: 1) whether the restriction on liberty is "impermissible punishment or permissible regulation"; and 2) whether the restriction is "excessive in relation to the regulatory goal Congress sought to achieve." *Id.* at 747, 107 S.Ct. at 2101.[11] If the interference with life, liberty, or property satisfies these inquiries, and therefore does not violate substantive due process, procedural due process requires that the restriction be implemented fairly. *Id.* at 746, 107 S.Ct. at 2101 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).

It is well established that deportation, notwithstanding the extreme hardship it imposes on those subjected to it, is a regulatory measure and not a form of punishment. *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984); *Carlson v. Landon*, 342 U.S. 524, 537, 72 S.Ct. 525, 532, 96 L.Ed. 547 (1952). To determine if this regulation is permissible, we must analyze the legislative intent behind the statute's enactment. *Salerno*, 481 U.S. at 747, 107 S.Ct. at 2101 (citing *Schall v. Martin*, 467 U.S. 253, 269, 104 S.Ct. 2403, 2412, 81 L.Ed.2d 207 (1984)). As previously noted in our discussion of petitioner's equal protection claim, the statute attempts to prevent the release on bail of those deemed to present a significant risk to society. Moreover, the statute attempts to prevent flight from this jurisdiction pending a final resolution of deportability. Although the traditional threat of flight from this country is not a concern since expulsion is exactly what the government is seeking, there remains the threat that an alien subject to deportation will abscond. Preventing an alien's release on bail insures his or her expeditious deportation following a final resolution of deportability. These concerns of Congress are legitimate and, therefore, permissible.

As noted, however, this does not complete our inquiry. We must next ascertain whether the detention is excessive in relation to the regulatory goal. In *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), one of the factors the Supreme Court looked at in concluding that the Bail Reform Act's pretrial detention procedures were constitutional, and not excessive, is the fact that the Act's provisions were limited to those crimes Congress considered the most serious. In addition, before finding the statute constitutional, the Court went on to note

---

**10.** Although substantive and procedural due process are certainly separate elements of the fifth amendment's due process clause, the arguments petitioner raises, and our treatment of them, permits them to be considered simultaneously.

**11.** We realize that the test announced in *Salerno* involved pretrial detention whereas in the case at bar petitioner has already been convicted and is presently facing deportation proceedings. The deportation proceeding, however, while ob- viously related to the underlying conviction, involves a different inquiry than the previous determination of petitioner's guilt. Therefore, we find the analogy to pretrial detention appropriate, at least for purposes of defining the proper scope of inquiry. As we later note, however, the standard to be used in determining whether bail should actually be granted following a hearing, as opposed to the present question of whether a hearing is necessary at all, should reflect the fact that petitioner has already been convicted.

that "[t]he arrestee [was] entitled to a prompt detention hearing." *Id.* at 747, 107 S.Ct. at 2101. This aspect of the *Salerno* case is absent in the case at bar. While section 242(a)(2) of the INA is limited to certain crimes, there is no provision for a prompt bail hearing. Moreover, in *Carlson v. Landon*, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952), the Supreme Court was faced with a challenge to a provision of the Internal Security Act of 1950 that provided the Attorney General with the "discretion" to hold an alien without bail pending deportation.[12] While concluding that the specific aliens in that case posed a sufficient threat to society to permit the withholding of bail pending a final determination of deportability, the Court explicitly stated that a "purpose to injure [society] could not be imputed generally to all aliens subject to deportation." *Id.* at 538, 72 S.Ct. at 533.

In the case at bar, the statute states that "the Attorney General shall not release such felon from custody." 8 U.S.C. § 1252(a)(2) (1988). We believe that this mandate is precisely the type of impermissible imputation of a threat to society that *Carlson* did not countenance. Section 242(a)(2) does not permit any type of hearing to question whether bail should be permitted, but instead, makes a general rule applicable to all aliens convicted of one of three types of crimes. The fact that the statute is limited to these specific crimes as in *Salerno* does not cure this defect since no case-by-case determination of suitability for release on bail is permitted by the statute. Moreover, the mere fact that there is a presumption of deportability based on petitioner's conviction of an aggravated felony does not obviate the need for a hearing. 8 U.S.C. § 1252a(c) (1988). Finally, the statute's requirement of expedited de-

portation proceedings for persons convicted of aggravated felonies is insufficient to save the statute. While the statute requires the Attorney General to initiate and, if possible, complete deportation proceedings and administrative appeals before the alien has even been released from incarceration for the underlying felony, 8 U.S.C. § 1252a(d) (1988), a deprivation of liberty occurs when these proceedings are not concluded, as in the case at bar, until after the alien is in INS custody.

Notwithstanding all the safeguards Congress attempted to put in the statute, there is still the risk that an alien convicted of an aggravated felony is being denied a liberty interest to apply for bail pending a decision on his deportability. When there is no challenge to deportability, deportation will proceed expeditiously. However, when, as in the case at bar, an alien applies for a discretionary stay of deportation, *see* 8 U.S.C. § 1254(a)(2), and when the safeguards of 8 U.S.C. § 1252a(d) have not been met, there is a right to a hearing. This rights exists even though an Immigration Judge retains the right to deny bail to an applicant. Therefore, we find the means Congress has chosen to impose the legitimate regulatory purpose behind the statute are excessive and violate petitioner's substantive due process rights. Similarly, the failure to allow for a hearing is a violation of the procedural due process rights of petitioner since it prevents the fair implementation of government regulations.[13] A bail hearing would not pose significant fiscal or administrative burdens on the government and would greatly minimize the risk of erroneous deprivation of a liberty interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47

---

12. Pursuant to the INA, similar discretionary authority is given to the Attorney General to hold deportable aliens without bail pending a determination of deportability. 8 U.S.C. § 1252(a)(1). This discretion is taken away from the Attorney General by the statute at issue when aliens convicted of aggravated felonies are involved. 8 U.S.C. § 1252(a)(2).

13. In *Chao Yang v. INS,* No. 3–90–CV–300 (D.Minn. June 27, 1990), Judge Renner similarly concluded that section 242(a)(2) of the INA was an unconstitutional violation of the petitioner's fifth amendment due process rights. The court enjoined enforcement of the provision until a hearing was held "to determine if [petitioner] poses a threat of danger to an individual or to

L.Ed.2d 18 (1976).[14]

■ The foregoing is by no means meant to suggest or establish the existence of an absolute constitutional right to bail. It is well settled that bail may be denied under many circumstances, including deportation cases, without violating any constitutional rights. *Carlson*, 342 U.S. at 544–55, 72 S.Ct. at 536–42; *United States v. Kostadinov*, 721 F.2d 411, 413 (2d Cir. 1983). In fact, the government cites a litany of cases standing for this proposition and then jumps to the conclusion that, therefore, section 242(a) is not unconstitutional because a court can deny bail anyway. This argument fails to address the gravamen of the issue presented to us, which is whether a hearing on bail is necessary at all. Our determination merely suggests that there is a liberty interest that is implicated when one is detained, which creates the right to a bail hearing. *Cf. United States v. Montalvo–Murillo,* — U.S. —, 110 S.Ct. 2072, 2077, 109 L.Ed.2d 720 (May 29, 1990) (discussing Bail Reform Act and finding that pretrial detention places "vital liberty interest" at stake). Moreover, while this issue has not been briefed by the parties, it appears that the appropriate inquiry at such a hearing is akin to that established for detention after conviction, either before or after sentencing. In those situations, there is a presumption of detention unless defendant/petitioner can establish by clear and convincing evidence that there is not a likelihood of flight and that there is no danger to society. 18 U.S.C. § 3143 (1988); *see United States v. Randell*, 761 F.2d 122, 124 (2d Cir.) (section 3143 expresses Congress' intent "to reverse the then prevailing presumption in favor of post-conviction bail"), *cert. denied*, 474 U.S. 1008, 106 S.Ct. 533, 88 L.Ed.2d 464

(1985). Only in these situations should an alien convicted of an aggravated felony be released on bail pending a final determination of deportability. *Cf. Hilton v. Braunskill*, 481 U.S. 770, 779, 107 S.Ct. 2113, 2120, 95 L.Ed.2d 724 (1987) (successful habeas petitioner seeking release pending government's appeal of federal court's ruling is in worse position than pretrial arrestee).[15]

### III. CONCLUSION

One of the hallmarks of our country is our willingness to allow foreigners to enter and engage in the pursuit of the American dream. In turn, the contributions by such individuals play a significant role in the vitality of our society. Unfortunately, in some instances these individuals decide that engaging in a life of vice is the easiest way to realize their goals. By enacting section 242(a)(2) of the INA, Congress attempted to create a class of crimes that would not only subject an individual to deportation, but also would prevent that individual from being released on bail pending a final determination of deportability. Recognizing that such aliens have rights protected by the Constitution, Congress also adopted procedures for expediting the process by which such aliens could be deported. This statute fails, however, to satisfy the fifth amendment's substantive and procedural due process requirements. Notwithstanding the fact that bail is by no means an absolute right, one must be afforded an opportunity to present a case for being released on bail pending a final adjudication of deportability, and the appropriate standard to govern such a hearing is that which is afforded individuals who have been convicted of a crime and are awaiting

the community or is unlikely to appear at any deportation hearing." *Id.*

**14.** The government suggests that petitioner's procedural due process rights have not been violated since petitioner has had an opportunity to challenge and appeal the applicability of the statute to his particular conviction, as well as to challenge and appeal his deportability. While this statement is accurate, it fails to address the fundamental question of whether a blanket prohibition against release on bail during the pend-

ency of a deportation proceeding, without any opportunity for a bail hearing, is constitutional.

**15.** Petitioner's final argument is that the statute violates the eighth amendment's prohibition against excessive bail. As noted, there is no absolute right to bail. However, it appears that based on our previous conclusions, a blanket rule prohibiting a court from even ascertaining whether bail in a particular situation is appropriate would violate this amendment as well.

sentencing or the final resolution of an appeal of their conviction.

The Immigration Judge is thereby ordered to conduct a hearing in accordance with this Opinion within thirty days.

SO ORDERED.