Christian Okey AGUNOBI, Plaintiff,

v.

Richard A. THORNBURGH, Attorney General, Eugene P. McNary, Commissioner, Immigration and Naturalization Service, Defendants.

No. 90 C 4600.

United States District Court,
N.D. Illinois, E.D.

Sept. 17, 1990.

Donald B. Kempster, Chicago, Ill., for plaintiff.

James G. Hoofnagle, Jr., Sp. Asst. U.S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Now before the court is the defendants' motion to dismiss, or in the alternative for summary judgment. The plaintiff's complaint requests declaratory and injunctive relief, alleging the following: the defendants' application of 8 U.S.C. § 1252(a)(2) amounts to the imposition of excessive bail and violates the Eighth Amendment to the United States Constitution; 8 U.S.C. § 1252(a)(2) violates the plaintiff's right to due process of law guaranteed to him by the Fifth Amendment to the Constitution; and the defendants' application of 8 U.S.C. § 1252(a)(2) to the plaintiff's case is a violation of 8 U.S.C. § 1252(a)(1). For the reasons set forth below, the court denies defendants' motion to dismiss, or in the alternative for summary judgment, except as to Count III of the complaint, and on the court's own motion grants the plaintiff summary judgment as to Counts I and II of the complaint.

## I. FACTS

The plaintiff Christian Okey Agunobi ("Agunobi") is a citizen of Nigeria, who was admitted to the United States for permanent residence on July 27, 1982. On November 3, 1989, in the United States District Court for the Eastern District of New York, Agunobi was convicted of the offense of importation of heroin in violation of 21 U.S.C. § 952(a) upon a plea of guilty, and sentenced to fourteen months imprisonment followed by a three year term of supervised release. Agunobi was incarcerated at the Federal Correctional Institution in Danbury, Connecticut. He was given credit for good time served and, on June 4, 1990, released into the custody of the Immigration and Naturalization Service ("INS"). On the same date, the INS charged Agunobi with deportability pursuant to 8 U.S.C. § 1252(a)(1), as an alien convicted for the violation of a law or a regulation relating to a controlled substance, and 8 U.S.C. § 1251(a)(4)(B), for having been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)[1]. The INS has detained Agunobi at the Oakdale Detention Center, located in Oakdale, Louisiana, pending his deportation hearing, pursuant to 8 U.S.C. § 1252(a)(2). Section 1252(a)(2) provides:

> The Attorney General shall take into custody any alien convicted of an aggravated felony upon completion of the alien's sentence for such conviction. Notwithstanding subsection (a) of this section, the Attorney General shall not release such felon from custody.

Section 1252(a)(1) provides, in relevant part:

> Pending a determination of deportability in the case of any alien ... such alien may ... be arrested and taken into custody. Except as provided in paragraph (2), any such alien taken into custody may, ... be released under bond ...

On June 15, 1990, Agunobi moved for a bond determination before Immigration Judge Duck in Oakdale, Louisiana. On August 2, 1990, Judge Duck denied Agunobi's motion and entered a decision containing the following reasoning:

> The Respondent has been charged under Section 241(a)(4)(B). This court is satisfied he is properly charged as such. Therefore, he is not entitled to be released on bond. The Board of Immigration Appeal has determined the completion of sentence for purposes of being detained as an aggravated Felon is his actual release from custody, and not at the end of his probation or parole.

Agunobi then filed this action on August 8, 1990.

---

**1.** This provision provides that a crime involving trafficking in drugs shall be considered to be an aggravated felony.

## II. DISCUSSION

### A. *Motion to Dismiss*

 The Government's argument in support of its motion to dismiss is that this court does not have jurisdiction over this matter because this action is, in effect if not in name, a petition for habeas corpus and the court does not have personal jurisdiction over the plaintiff's custodian. The court rejects the Government's argument. This is not a petition for habeas corpus. The plaintiff is not requesting his release, but rather that a bond determination be made considering the particular facts and circumstances of his case and accordingly, the conclusive presumption in Section 1252(a)(2), which stands between the plaintiff and any bond hearing, be declared unconstitutional. Moreover, the government's claim that the court does not have jurisdiction over the plaintiff's custodian is also without merit. The government argues that the custodian is located in Oakdale, Louisiana, but it is clear from the statute itself that the custodian is the Attorney General of the United States, who is certainly subject to the jurisdiction of this and other United States courts. 8 U.S.C. § 1252(a)(2). Finally, the government's arguments that the plaintiff was convicted and sentenced in New York; served his term of imprisonment in Connecticut; and is now being held in Louisiana do not defeat this court's jurisdiction and are more appropriately considered in the context of venue.

### B. *Venue*

 This case raises important issues as to venue. Venue is normally appropriate for judicial review of immigration decisions in either the district where the plaintiff resides or where the administrative proceedings were initiated. *See e.g. Maldonado–Perez v. INS*, 865 F.2d 328, 337 (D.C. Cir.1989); *Randall v. Meese*, 854 F.2d 472, 478 (D.C.Cir.1988), *cert. den.*, —— U.S. ——, 109 S.Ct. 3186, 105 L.Ed.2d 694 (1989). Agunobi argues that he retains his residence prior to his incarceration, which was Chicago, Illinois. An action may be brought against government officials act-

ing in their official capacities in the judicial district where the plaintiff resides pursuant to 28 U.S.C. § 1391(e). Thus, the issue resolves itself to whether the plaintiff retained his residence prior to his incarceration or, if his residence is the place of his incarceration (Danbury, Connecticut) for the underlying criminal conviction or, if the plaintiff now resides in Oakdale, Louisiana. The government does not address this issue, but rather appears to accept plaintiff's argument that Chicago, Illinois is his residence. (Government's Memorandum, p. 6) The court notes that there is a split of authority as to whether a prisoner retains his residence when he is incarcerated. *Compare O'Brien v. Schweiker*, 563 F.Supp. 301 (S.D.N.Y.1983); *with In re Pope*, 580 F.2d 620 (D.C.Cir.1978). The circumstances of this case, however, make the finding that the plaintiff has retained his residence in Chicago, Illinois most reasonable. Accordingly, venue is proper in this district.

### C. *"Completion of Sentence"*

 Agunobi argues that the INS has unlawfully applied Section 1252(a)(2) to the facts of his case in that Agunobi has not "completed his sentence" within the meaning of the statute, because Agunobi has not completed his term of supervised release. Thus, the issue is whether "upon completion of the alien's sentence" means completion of the term of incarceration only, or completion of the entire sentence, including supervised release. The Board of Immigration Appeals has found that "sentence" as used in the statute means term of imprisonment. *Matter of Eden*, Interim Decision No. 3137 (BIA 1990).

This issue is addressed indirectly in the statute itself. Section 1252(h) provides as follows:

An alien sentenced to imprisonment shall not be deported until such imprisonment has been terminated by the release of the alien from confinement. Parole, supervised release, probation, or possibility of rearrest or further confinement in respect of the same offense shall not be a ground for deferral of deportation.

A rational and consistent reading of these sections requires the interpretation that the use of the word "sentence" in Section 1252(a)(2) refers to the term of incarceration. Therefore, the court grants the government's motion to dismiss as to Count III of the complaint.

### D. *Constitutionality of Section 1252(a)(2)*

■ The constitutionality of Section 1252(a)(2) has been addressed by four other district judges. Judge Zagel, of this district, most recently held that Section 1252(a)(2) violated the Due Process Clause. *Hunneiti v. Thornburgh,* No. 90 C 4169 (minute order and court proceedings of August 31, 1990). Judge Goettel of the Southern District of New York and Judge Renner of the District of Minnesota have also held that the statute violates the Due Process Clause. *Yang v. United States Immigration & Naturalization Service,* 3–89 Civil 364 (D.Minn. June 27, 1990); *Leader v. Blackman,* 744 F.Supp. 500 (S.D.N.Y. 1990). Judge Kehoe, of the Southern District of Florida, however, has upheld the constitutionality of the statute. *Eden v. Thornburgh,* No. 90–1473–CIV (S.D.Fla. July 23, 1990) (order denying application for temporary restraining order and preliminary injunction). This court agrees with the reasoning set forth in *Leader.*

The plaintiff in *Leader* attacked the statute, alleging that it violated his rights to substantive and procedural due process, equal protection and freedom from cruel and unusual punishment under the Fifth, Fourteenth and Eighth Amendments, respectively. Agunobi alleges the same violations of his constitutional rights, except for the equal protection challenge.

### 1. Due Process

Agunobi argues that his indefinite incarceration without an individual determination as to whether he poses danger to the community or that he is a flight risk violates his rights to substantive and procedural due process. The government responds that "Congress has properly made a policy decision that aliens who are convicted of aggravated felonies must be deported and incident to that determination it can detain the alien for deportation without implicating any 'right' to be at liberty." (Government's Memorandum, p. 12) The government states the obvious. The issue is not whether Congress decided that all aliens convicted of aggravated felonies should be held pending deportation hearings without bond determinations. The statute demonstrates that Congress did just that. The issue is whether that "policy decision" is permissible under our Constitution. This court holds that it is not.

In *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the Supreme Court considered the constitutionality of a provision of the Bail Reform Act of 1984, which requires that persons arrested and charged with certain serious felonies be detained pending trial if the government demonstrates by clear and convincing evidence that there were no release conditions that could sufficiently assure the safety of other persons and the community. 18 U.S.C. § 3142(e). The statute considered by the Supreme Court in *Salerno* was similar to the one presented here in that it provides for indefinite detention, but it differs from the statute here in that the Bail Reform Act sets forth detailed procedures to be followed in determining whether the arrestee should be detained indefinitely, pending trial. This court utilizes the analysis set forth in *Salerno* to determine if Agunobi's due process rights are violated by the statute.

The first issue under the due process analysis is whether the government action interferes with rights implicit in the concept of ordered liberty. *Palko v. Connecticut,* 302 U.S. 319, 325–26, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). "When government action depriving a person of life, liberty or property survives substantive due process scrutiny, it must still be implemented in a fair manner ... This requirement has been traditionally been referred to as 'procedural' due process." *Salerno,* 107 S.Ct. at 2101. It is clear that Agunobi is being deprived of his liberty and therefore,

the remaining question is whether that deprivation should "be subordinated to the greater needs of society." *Salerno*, 107 S.Ct. at 2103. In *Salerno*, the Court was satisfied that Congress enacted the legislation in response to important societal interests, i.e. the prevention of crime and the safety of the community. Here, the important societal interest implicated, according to the government, is the danger that aliens who have been convicted of aggravated felonies and are therefore, presumptively subject to deportation, will abscond, thereby frustrating Congress' intent and the purpose behind the immigration laws. This court does not question the importance of society's interest in ensuring that those aliens who should be deported are deported. This court does question, however, the lack of procedural safeguards set forth in the statute. The *Salerno* Court was persuaded that the "legitimate and compelling regulatory purpose of the Act and the procedural protection it offer[ed]" compelled the conclusion that the Bail Reform Act was not facially invalid under the Due Process Clause of the Fifth Amendment. Section 1252(a)(2) does not offer any such procedural safeguards and accordingly, this court finds that the statute violates the Fifth Amendment Due Process Clause and grants the plaintiff summary judgment as to Count II of the complaint.

### 2. Eighth Amendment Excessive Bail Clause

■ The *Salerno* Court also considered a challenge to the Bail Reform Act under the Eighth Amendment. The Court rejected that challenge also, but the Court's reasoning and *dicta* indicate that this court should sustain Agunobi's Eighth Amendment challenge. The *Salerno* Court discussed *Carlson v. Landon*, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952), in which the Supreme Court held that detainees could be held without bond pending deportation without violating the Eighth Amendment prohibition against excessive bail, where the Attorney General determined that "there was reasonable cause to believe that [their] release would be prejudicial to the public interest and would *endanger the welfare and safety of the United States.*" *Salerno*, 107 S.Ct. at 2105 (emphasis in original), *citing Carlson v. Landon*, 342 U.S. at 529, 72 S.Ct. at 528. The rationale behind the *Carlson* decision was that the Eighth Amendment was derived from English common law, which provided that bail could not be set at an excessive amount only in those circumstances in which bail was properly granted. The *Salerno* Court noted, however, that bail is not compulsory in certain categories of cases. The *Salerno* Court also stated the following:

> The only arguable substantive limitation of the Bail Clause is that the government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil. Of course, to determine whether the government's response is excessive, we must compare that response against the interest the government seeks to protect by means of that response.
>
> Thus, when the government has admitted that its only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal, no more ... We believe that when Congress has mandated detention on the basis of a compelling interest other than the prevention of flight, as it has here, the Eighth Amendment does not require release on bail.

*Salerno*, 107 S.Ct. at 2105. In this case, the government argues that Congress' intent in enacting section 1252(a)(2) was to foreclose the possibility that aliens convicted of aggravated felonies would abscond pending their deportation hearings. That justification is not enough under *Salerno*. The *Salerno* Court's analysis compels the conclusion that the statute's failure to provide any bail determination violates the Eighth Amendment of the Constitution. Accordingly, the Court grants the plaintiff summary judgment as to Count I of the complaint.

### III. CONCLUSION

For the reasons set forth in this opinion, the court grants the defendants' motion to

dismiss Count III of the complaint, and on its own motion, grants the plaintiff summary judgment as to Counts I and II of the complaint. Accordingly, the court declares 8 U.S.C. § 1252(a)(2) violates both the Fifth and Eighth Amendments to the United States Constitution.