Nabor A.
FERNANDEZ–SANTANDER, Petitioner,

v.

Richard THORNBURGH, et al.,
Respondents.

Civ. No. 90–0243–P.

United States District Court,
D. Maine.

Nov. 9, 1990.

Peter L. Darvin, Pine Tree Legal Assistance, Portland, Me., for petitioner.

Jonathan R. Chapman, Asst. U.S. Atty., Portland, Me., for respondents.

## MEMORANDUM OF DECISION ON PETITIONER'S MOTION FOR WRIT OF HABEAS CORPUS

GENE CARTER, Chief Judge.

Petitioner, an alien, is a lawful permanent resident of the United States. In June 1990 he pled guilty in state court to a charge of trafficking cocaine, a class B felony under Maine law. He was sentenced to a term in jail and a period of probation. While in jail Petitioner was served with an Order to Show Cause charging him with being deportable under the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4)(B), as a result of his conviction of an aggravated felony, a drug trafficking crime, as defined by 8 U.S.C. § 1101(a)(43).

Section 1252a(c) provides that an alien convicted of an aggravated felony "shall be

conclusively presumed to be deportable from the United States." If the Attorney General is not able to complete deportation before the alien has been released from incarceration on the felony charge, *see* 8 U.S.C. § 1252a(d), section 1251(a)(2) requires the Attorney General "to take into custody any alien convicted of an aggravated felony upon the completion of the alien's sentence" and not release such felon from custody. Petitioner has applied to the immigration judge for discretionary relief from deportation under 8 U.S.C. § 1182(c). The Immigration and Naturalization Service is holding Petitioner without bond pursuant to section 1252(a)(2) until resolution of his deportation case. Petitioner sought a bond determination hearing. The hearing was held on August 31, 1990, and bond was denied on the statutory grounds that Petitioner is an aggravated felon. He did not appeal the decision of the immigration judge.

Petitioner seeks a writ of habeas corpus, alleging that section 1252(a)(2) does not apply to him and that it violates his due process rights and is, therefore, unconstitutional. He seeks a bond hearing at which he may present evidence showing his entitlement to bond.

### Applicability of the Statute

■■■ Petitioner argues that the section 1252(a)(2), barring release on bond for aggravated felons, does not apply to him because he has not committed an aggravated felony. Under the statute "the term 'aggravated felony' means ... any drug trafficking crime as defined in section 924(c)(2) of title 18, United States Code, ... or any attempt or conspiracy to commit any such act committed within the United States." A drug trafficking crime is defined in section 924(c)(2) as "any felony punishable under the Controlled Substances Import and Export Act (21 U.S.C. § 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C.App. § 1901 et seq.)." Petitioner argues his state conviction is not an aggravated felony because section 924(c)(2) does not mention state crimes. He asserts that if Congress had intended to include state crimes within the definition it would have done so expressly.

Prior to 1988 section 924(c)(2) defined a drug trafficking crime as "any felony violation of Federal law involving the distribution, manufacture, or importation of any controlled substance." Congress amended section 924(c)(2) in 1988 to refer to crimes "punishable under" the Controlled Substances Act and two other federal statutes. It is plain that prior to 1988 a violation of federal law was required to meet the definition of drug trafficking crime. Petitioner asserts that despite the change in statutory language a violation of federal law is still required. The Court cannot agree.

The Supreme Court addressed a similar issue under the RICO statute and interpreted the term "punishable under" a given law to mean that one *could be* convicted under the law rather than that one *had been* convicted. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 488, 105 S.Ct. 3275, 3280–81, 87 L.Ed.2d 346 (1985). If Congress had intended to require convictions under federal law, it could have expressly said just that. Also, the Court notes that both the aggravated felony legislation and the drug trafficking crime definition are parts of the Anti–Drug Abuse Act of 1988, by which Congress intended to broaden and intensify its fight against drugs. In this context, it seems unlikely that in choosing which aliens are deportable for undesirable conduct, Congress sought to differentiate between aliens convicted of similar drug-related offenses on the basis of the jurisdiction of the prosecution. In *Leader v. Blackman*, 744 F.Supp. 500 (S.D.N.Y.1990), relying on the well-reasoned and thorough, but unpublished, opinion by the Board of Immigration Appeals in *Matter of Barrett*, Interim Decision # 3131 (March 2, 1990), the court addressed precisely the same issue raised here, concluding: "[W]e are convinced that Congress intended the statute to apply to both federal and state convictions." This Court agrees, finding that state crimes can be included within the definition of drug trafficking crime set forth in 18 U.S.C. § 924(c)(2) and incorporated into the Immigration and Nationality Act at 8 U.S.C. § 1101(a)(43).

An examination of the elements of 17–A M.R.S.A. § 1103, the statute under which Petitioner was convicted, shows that it proscribes the distribution of controlled substances, which are in turn defined to include cocaine. That conduct would plainly be punishable under federal law, 21 U.S.C. § 841, if prosecution had been undertaken by federal authorities. Thus, section 1252(a)(2) applies to Petitioner.

### Constitutionality of the Statute

■ Petitioner also asserts that the provisions of 8 U.S.C. § 1252(a)(2) violate his rights to both substantive and procedural due process guaranteed by the Fifth Amendment of the United States Constitution. Specifically, he asserts that he has been denied his fundamental right to liberty because the statute requires the Attorney General to keep an alien convicted of an aggravated felony in custody after completion of the alien's sentence on such conviction without providing an opportunity to apply for bail.[1] The Government argues that given the very limited scope of judicial inquiry into immigration law, such detention passes constitutional muster because there is a "facially legitimate and bona fide reason" for the statute's enactment. *See Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1477–78, 52 L.Ed.2d 50 (1977). The constitutionality of section 1252(a)(2) has been the subject of debate in the United States District Courts, most of it in unpublished opinions. *But see Leader,* 744 F.Supp. 500; *Morrobel v. Thornburgh,* 744 F.Supp. 725 (E.D.Va.1990). A slight majority of these cases have found section 1252(a)(2) unconstitutional.

The Supreme Court has made clear that due process is afforded resident aliens within the jurisdiction of the United States. *Mathews v. Diaz,* 426 U.S. 67, 77, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976). It is clear, too, that Congress has broad power over immigration that is plenary and political in nature. *Flores v. Meese,* 913 F.2d 1315 (9th Cir.1990). In *Flores,* the court

expressed the recent view of a number of courts that the exercise of that power will be subject only to the very limited review described in *Fiallo,* even when the challenged legislation impinges upon the due process rights of an alien who is being detained during the deportation process. This Court is satisfied that the *Flores* formulation sweeps too broadly and agrees with the dissenting judge in that case that

> [i]n effect the majority is moving from the uncontroverted propositions that the political branches have plenary authority over deciding whom to admit into the country and that such political decisions are largely immune from judicial review, to the unsupportable conclusion that how it treats those whom it detains while the deportation process is underway is likewise beyond judicial review. This is an unwarranted leap.... The courts' deference to the 'plenary power' of Congress is limited essentially to Congress's decision regarding who is excludable; it does not extend to their treatment during the deportation process.

*Flores,* 913 F.2d at 1339 (Fletcher, J. dissenting).

Plainly, the statute prohibiting release on bond for aggravated felons is not a statute deciding who is excludable. Basically, the statute, which is part of the Anti–Drug Abuse Act of 1988, deals with how persons who are considered categorically dangerous and who are awaiting deportation shall be treated. In *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the Supreme Court recently conducted a due process analysis of the Bail Reform Act, which, in providing for pretrial detention of persons arrested for certain crimes, is analogous in certain important respects to section 1252(a)(2). The Court, therefore, finds the type of due process inquiry conducted by the Court in *Salerno* to be appropriate in this case. *See Leader,* 744 F.Supp. 500 (adopting *Salerno* analysis for due process challenge to section 1252(a)(2)).

---

1. Although detained aliens like Petitioner are given an opportunity for a bond hearing, the hearing merely determines whether they are "aggravated felons." If they fall into that category, they may not seek bond.

1010

Citing *Carlson v. Landon,* 342 U.S. 524, 537–542, 72 S.Ct. 525, 532–35, 96 L.Ed. 547 (1952), the government argues, however, that detention is necessarily a part of the deportation process, and therefore, statutes relating to detention of aliens should be accorded the same type of deference as other immigration statutes. In *Carlson* the Supreme Court found that compelling governmental interests outside the context of war can justify detention of dangerous persons. *United States v. Salerno,* 481 U.S. 739, 748, 107 S.Ct. 2095, 2102, 95 L.Ed.2d 697 (1987). Despite its conclusion that detention is part of the deportation process, the Court did not apply the deferential standard which respondents seek. In *Carlson* the Supreme Court upheld the Attorney General's exercise of discretion in detaining aliens determined to be active communists pending final resolution of their deportability under the Subversive Activities Control Act, which provided for the deportation of all alien communists. *Id.*[2] The Supreme Court has subsequently made clear that *Carlson* stands for the proposition that there is "no *absolute* constitutional barrier to detention of potentially dangerous resident aliens pending deportation proceedings." *Salerno,* 481 U.S. at 748, 107 S.Ct. at 2102 (emphasis added). The Court in *Salerno* went on to state that the law challenged in that case, the Bail Reform Act, must be evaluated "in precisely the same way that we evaluated the laws in [*Carlson* and the other cases discussed] in which persons are detained prior to or even without criminal trial and conviction." *Id.* The Court will, therefore, proceed with the *Salerno* inquiry.

Petitioner alleges that both his substantive and procedural due process rights have been violated. The substantive due process inquiry, which determines whether the government has engaged in conduct which shocks the conscience, has two components: whether the restriction on liberty is "impermissible punishment or permissible regula-

tion", and whether the restriction is "excessive in relation to the regulatory goal Congress sought to achieve." *Salerno,* 481 U.S. at 747, 107 S.Ct. at 2101. Procedural due process requires that even if a restriction on liberty meets the substantive due process requirements, it must be implemented fairly. *Id.*

It is well settled that "deportation, notwithstanding the extreme hardship it imposes on those subjected to it, is a regulatory measure and not a form of punishment." *Leader,* 744 F.Supp. 500 (citing *Carlson v. Landon,* 342 U.S. at 537, 72 S.Ct. at 532–33). Section 1252(a)(2) is plainly designed to prevent the release on bail of those deemed to present a significant risk to society and to prevent flight from the Court's jurisdiction of those pending a final resolution of deportability. *Leader,* 744 F.Supp. 500. As the Court said in *Salerno,* 481 U.S. at 747, 107 S.Ct. at 2101, "[t]here is no doubt that preventing danger to the community is a legitimate regulatory goal." Section 1252(a)(2) is, therefore, "permissible regulation." *Leader,* 744 F.Supp. 500.

In *Salerno,* the Court found that the Bail Reform Act's detention was not excessive in relation to Congress's regulatory goal. The reasons for this are two-fold. First, the Bail Reform Act "carefully limits the circumstances under which detention may be sought to the most serious of crimes." *Id.* Certainly, that is true also for section 1252(a)(2), which limits its mandatory detention to aliens convicted of aggravated felonies.

The Court, however, also found important for the constitutionality of the Bail Reform Act the fact that the detainee is entitled to a prompt detention hearing. *Id.* At that hearing a judicial officer must consider whether there is any "condition or combination of conditions [which] will reasonably assure the appearance of the per-

---

**2.** The Court gave as its reason for sanctioning detention of certain groups of aliens that "[o]therwise aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings." *Carlson,* 342 U.S. at 538, 72 S.Ct. at

533. The Court immediately stated, however: "Of course purpose to injure could not be imputed generally to all aliens subject to deportation, so discretion was placed by the 1950 Act in the Attorney General to detain aliens without bail." *Id.*

son as required and the safety of any other person and the community." 18 U.S.C. § 3142. Section 1252(a)(2) fails to provide any such hearing. The Supreme Court in *Carlson* expressly stated: "Of course purpose to injure could not be imputed generally to all aliens subject to deportation, so discretion was placed by the 1950 Act [the Internal Security Act] in the Attorney General to detain aliens without bail." *Carlson*, 342 U.S. at 538, 72 S.Ct. at 533. Because section 1252(a)(2) provides for no detention hearing and for no possibility of discretion as regards detention, it in effect imputes purpose to injure and risk of flight to all aliens subject to deportation as aggravated felons. *Leader*, 744 F.Supp. 500. This is impermissible. *Id.*

The Court finds that detention without a hearing to determine if an alien poses a real threat to community safety or a risk of absconding is an excessive regulatory measure when compared to the regulatory goal Congress sought to achieve. Although the government has a significant interest in protecting society and assuring the deportation of aliens it deems undesirable, the alien has a strong interest in liberty. *See Salerno*, 481 U.S. at 750, 107 S.Ct. at 2103. With the Bail Reform Act Congress demonstrated that it could achieve goals very similar to those sought to be achieved by section 1252(a)(2) while providing protection for the detainee's liberty interest through an individual hearing. Bond hearings are familiar to the immigration system, *see* 8 U.S.C. § 1252(a)(1), and would be no more burdensome to the agency than the opportunity now afforded aliens like Petitioner to challenge the applicability of the statute and their deportability. Although the statute mandates that the Attorney General deport aggravated felons with the greatest expedition possible, 8 U.S.C. § 1252a(d), this safeguard against deprivation of an alien's liberty cannot miti-

gate the excessive nature of the regulation. There is still the possibility of an indeterminate period of detention while the alien awaits deportation or, as here, applies for a discretionary stay of deportation. *Leader*, 744 F.Supp. 500. Given the significant liberty interest involved, and the failure of the statute to provide adequate protection for it, the Court finds that section 1252(a)(2) is facially invalid under the Due Process Clause of the Fifth Amendment.

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).[3] Given the analysis above, it is plain that section 1252(a)(2), the government regulation at issue here, is not fairly implemented and thus violates the Fifth Amendment's requirement of procedural due process because the aliens detained under it are not afforded a hearing before they are deprived of their liberty. *Id.* at 335, 96 S.Ct. at 903.[4] A hearing, which would entail very little administrative or fiscal cost to the agency, would significantly decrease the risk that an alien subject to detention is deprived of his liberty erroneously. *Leader*, 744 F.Supp. 500; *see also*, *id.*

In accordance with the opinion herein and with its October 31, 1990, order in this matter, this case is REMANDED to the Immigration Judge so he may conduct a hearing and determine if Petitioner may be enlarged on bail pending a final resolution of his deportation proceedings.

SO ORDERED.

---

3. The Court rejects the Government's assertion that Petitioner's right to procedural due process is limited to whether section 1252(a)(2) was properly invoked.

4. In *Mathews* the Court explained that in examining claims of deprivation of procedural due process, the Court must examine (1) the private interest affected; (2) the risk of erroneous deprivation of that interest; (3) the probable value of additional safeguards; (4) the government's interest; and (5) the fiscal and administrative burdens on the government of providing additional safeguards. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903.