MATTER OF SUGAY

In Bond Proceedings

A-23070977

*Decided by Board February 18, 1981*

(1) Notwithstanding that an immigration judge lowered bond after a redetermination hearing, the District Director has authority under 8 C.F.R. 242.2(c) to increase the bond later if there is a change of circumstances.

(2) Where, subsequent to the immigration judge's redetermination of bond, the respondent was ordered deported and was denied relief at a deportation hearing when it was shown he had no fixed address, no stable employment, no close family ties, had been convicted of murder in the Philippines and had fled while the case was on appeal, had been arrested in the United States for wielding a knife, and had jumped from a window to avoid apprehension by INS, there was a sufficient change of circumstances to justify the District Director in increasing the bond, despite an immigration judge having lowered it in the earlier bond hearing.

ON BEHALF OF RESPONDENT:
  Eugene Chow, Esquire
  Simmons & Ungar
  517 Washington Street
  San Francisco, California 94111

ON BEHALF OF SERVICE:
  Brian H. Simpson
  Appellate Trial Attorney

BY: Milhollan, Chairman; Maniatis, Appleman, and Maguire, Board Members

The respondent appeals from an order of the immigration judge, dated December 19, 1980, denying the respondent's request for a change in his custody status, and retaining the amount of bond set by the District Director at $30,000. The appeal will be dismissed.

The respondent is a 34-year-old native and citizen of the Philippines who last entered the United States on August 12, 1973, as a nonimmigrant visitor, admitted for a period not to exceed 6 months. The nonimmigrant visa with which he entered the United States was issued to someone other than the respondent. On February 15, 1979, an Order to Show Cause was issued against the respondent charging him under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(2), as a nonimmigrant alien not in possession of a valid nonimmigrant visa or border crossing identification card and not

exempted from the possession thereof.

At the respondent's first bond determination hearing, held on February 16, 1979, the immigration judge lowered the amount of bond set by the Immigration and Naturalization Service from $50,000 to $20,000. At the hearing the Service presented evidence that the respondent had been convicted of murder in the Philippines on May 18, 1972, and had absconded from the country while the case was on appeal there. The respondent did not contest these allegations. The judge, however, declined to retain the bond at $50,000 because the documents presented by the Service had not been certified or authenticated.

At the respondent's deportation hearing, held on December 19, 1980, he was found deportable under section 241(a)(2) based on his own admissions and was denied relief under sections 243(h) and 244 of the Act.[1] As a result of the deportation order the District Director elected to revoke the respondent's release on $20,000 bond and subsequently set bond at $30,000. In his decision dated December 19, 1980, the immigration judge upheld this determination by means of an order that any change in the custody status of the respondent be denied. The judge based his decision on the following factors: the Service had presented a proper conviction record for the respondent; the respondent had been ordered deported from the United States; and his application for relief under section 243(h) had been denied. The judge concluded that the likelihood that the respondent would abscond was far greater than it had been at the prior bond redetermination hearing.

On appeal, the respondent, through counsel, offers the following arguments as to why the original amount set for bond should not have been revoked and subsequently raised an additional $10,000: (1) the respondent has a long history of appearing in immigration court upon request of the Service and has at all times been available and present when called for a hearing; (2) the respondent's conviction of murder in the Philippines was based on trumped up charges to punish him for his participation in political demonstrations against President Marcos; and (3) the respondent only fled from the Philippines because he believed the prosecution and the judiciary were controlled by the Marcos regime and he could not receive a fair review of his conviction. The respondent also questions the authority of the District Director to revoke a bond where the alien has already had a bond redetermination hearing and the facts and underlying circumstances of the case are virtually identical as they were at the time of the original hearing.

The Board has held that in determining the necessity for and the amount of bond, among the factors to be taken into consideration are:

---

[1] Since an appeal is pending before the Board, the provisions of 8 C.F.R. 242.2(b) with respect to custody for purposes of deportation are not applicable here.

stable employment history, length of residence in the community, existence of family ties, a record of nonappearance at court proceedings, and previous criminal or immigration law violations. *Matter of Shaw,* Interim Decision 2744 (BIA 1979); *Matter of Spiliopoulos,* 16 I&N Dec. 561 (BIA 1978); *Matter of Patel,* 15 I&N Dec. 666 (BIA 1976); *Matter of San Martin,* 15 I&N Dec. 167 (BIA 1974); *Matter of Moise,* 12 I&N Dec. 102 (BIA 1967); *Matter of S—Y—L—,* 9 I&N Dec. 575 (BIA 1962).

In the instant case, information elicited at the deportation hearing, which took place subsequent to the immigration judge's reduction of bond on February 16, 1979, reveals the following: the respondent has no fixed address but rather, changes residences with great frequency; he has not had any stable employment since 1978; his family in the United States consists of a brother, presently incarcerated in Vacaville State Prison for embezzlement, a sister, whose address is unknown to the respondent, and a brother and sister residing in California, whom the respondent visits occasionally. In addition to his conviction for murder in the Philippines, the respondent has also been arrested in the United States for brandishing a knife in conjunction with a confrontation outside a bowling alley.[2] While it appears that the respondent has consistently appeared for his recent immigration court hearings, we note that he eluded the immigration officials for 6 years and jumped out of a window in an effort to avoid apprehension. We also note that after the respondent was convicted of murder in the Philippines he fled the country while his case was on appeal.[3]

We find without merit counsel's argument that the District Director was without authority to revoke bond once an alien has had a bond redetermination hearing. 8 C.F.R. 242.2(c) clearly states that "[w]hen an alien, who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the District Director..., in which event the alien may be taken into physical custody and detained." Counsel's contention that this power could "undermine the impartial and independent decision of the immigration judge under section 242.2(b)" because "it gives the District Director the opportunity to avoid ever having to file an appeal, since he can always revoke a bond redetermined by the judge" is addressed in the second part of the above-quoted code section. "The provisions of paragraph (b) of this section shall govern availability to the respondent of recourse to other administrative authority for release from custody." *See* 8 C.F.R. 242.2(c). The alien may, as he did in this case,

---

[2] The incident did not result in any further criminal prosecution.

[3] We find no support in the record for the respondent's claim that he was convicted on trumped up charges due to his political activities.

again appeal the amount of bond set by the District Director, thus assuring that the District Director does not act arbitrarily or capriciously.

While we recognize counsel's argument that where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance, we find in the instant case that the newly developed evidence brought out at the deportation hearing, combined with the fact that the respondent has been ordered deported and his applications for suspension and withholding of deportation were denied, represent a considerable change in circumstances which justify the District Director's decision to raise the amount of bond. In reaching our conclusion we have taken cognizance of the fact that the respondent is the father of two United States citizen children who reside in this country. However, in view of the fact that the respondent is wanted for murder in the Philippines and the overall quality of his record, we conclude, as did the immigration judge, that a bond of $30,000 is warranted. Accordingly, the appeal will be dismissed.

ORDER: The appeal is dismissed.