Carlos Jose MORROBEL, Plaintiff,

v.

Richard A. THORNBURGH, et al., Defendants.

Civ. A. No. 90–0985–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 29, 1990.

Pamela H. Goldstein, William A. Davis, Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., for plaintiff.

Henry E. Hudson, U.S. Atty., Paula P. Newett, Asst. U.S. Atty., Alexandria, Va., for defendants.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter is before the court on cross motions for summary judgment. The court finds that there are no material facts in dispute and the case can be decided on the summary judgment motions.

Plaintiff Carlos Morrobel is a 34 year old native and citizen of the Dominican Republic, who has been convicted of attempted distribution of cocaine. On June 13, 1990 Morrobel was charged by the Immigration and Naturalization Service with being deportable under § 241(a)(4)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4)(B), as an alien who was convicted of an aggravated felony at any time after entry into the United States, and under § 1251(a)(11), as an alien who "at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation of a State, the United States, or a foreign country relating to a controlled substance."

On June 26, 1990 Plaintiff appeared before an Immigration Judge, at which time Plaintiff informed the Judge of his intention to file an application for relief from deportation pursuant to 8 U.S.C. § 1182(c). In addition, Plaintiff requested that the court consider whether Plaintiff could be released from INS custody on his own recognizance or under an appropriate bond. The Immigration Judge denied that request relying on the case of *Matter of Eden*, Int.Dec. 3137 (B.I.A.1990), stating that federal statutory law does not authorize the Attorney General or his delegate to release Plaintiff. The statute relied upon in *Matter of Eden*, 8 U.S.C. § 1252(a)(2) provides that:

> The Attorney General shall take into custody any alien convicted of an aggravated felony [1] upon completion of the alien's sentence for such conviction. Notwithstanding subsection (a) the Attorney General shall not release such felon from custody.

Plaintiff in this case does not contest the issue of his deportability. Rather, Plaintiff's sole challenge is to the application and effect of 8 U.S.C. § 1252(a)(2). Specifi-

---

1. An "aggravated felony" is defined as "murder, any drug trafficking crime as defined in section 924(c)(2) of Title 18, or any illicit trafficking in any firearms or destructive devices as defined in section 921 of such title, or any attempt or conspiracy to commit any such act, committed within the United States." 8 U.S.C. § 1101(a)(43). As indicated above, Mr. Morrobel pled guilty to the charge of attempted distribution of cocaine.

cally, Plaintiff contends that his denial of a bail hearing and continued incarceration without the possibility of bail constitutes a denial of due process as guaranteed by the Fifth Amendment, that the irrebuttable presumption which denies Plaintiff an individualized bond determination violates the Bail Clause of the Eighth Amendment and that Plaintiff's detention and incarceration by the INS prior to the conclusion of his term of parole constitutes an improper application of the statute.

## I. DUE PROCESS

Plaintiff's first claim is that he has been denied due process of law in violation of the Fifth Amendment because he has not had and, by statute, cannot have a bail hearing to determine whether or not his release would constitute a threat of danger to the community or whether he is likely to flee. Plaintiff cites *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), for the proposition that consideration of these two factors is the normal justification for preconviction confinement. Thus, the argument goes, as lawful resident aliens are protected by the due process clause of the Fifth Amendment during deportation proceedings, *See Landon v. Plasencia*, 459 U.S. 21, 33, 103 S.Ct. 321, 329–30, 74 L.Ed.2d 21 (1982), they must be afforded the protections of *Salerno*.

To begin with Plaintiff is not correct in asserting that he was denied an individual bail hearing. There is a statutory and regulatory mechanism to administratively evaluate the propriety of detention for aggravated felons. *See* 8 U.S.C. § 1252(a)(1) and 8 CFR 242.2(d). These regulations specifically provide that the INS's determination on custody may be reviewed by the Immigration Judge, "upon application by the respondent for release from custody." *Id.* The Immigration Judge is further given authority "to continue to detain a respondent or to release him from custody."

In this case Plaintiff, appeared before the Immigration Judge and had a full hearing. During the proceeding, Plaintiff requested release from custody on bond. Indeed, Plaintiff concedes that the Immigra-

tion Judge denied his request for release from custody and Plaintiff elected not to appeal that ruling. Thus, it is not the lack of an actual bail hearing that Plaintiff complains of but rather the effect of § 1252(a)(2) in binding the Immigration Judge during that proceeding.

■ To the extent that Plaintiff's claim is a constitutional attack on the effect of § 1252(a)(2) and not on the lack of procedures provided, the proper focus for the court is a substantive evaluation of the statute, itself, and not a procedural due process test as set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Analysis of Plaintiff's claim in this light clearly supports the constitutionality of the statute.

■ At the outset, it is important to note that the scope of judicial inquiry into immigration legislation is limited. *See Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1477–78, 52 L.Ed.2d 50 (1977). The extraordinary discretion given to Congress in this area, which involves political considerations, permits only narrow judicial review. As the Supreme Court has stated, "Our cases have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Shaughnessy v. Mezei*, 345 U.S. 206, 210, 73 S.Ct. 625, 628, 97 L.Ed. 956 (1953).

■ It should also be noted that provisions of due process afforded convicted criminals are different from those afforded resident aliens. *See Flores v. Meese*, 913 F.2d 1315, 1327–1328 (9th Cir.1990). Civil deportation proceedings feature fewer procedural due process protections than a criminal trial. *See e.g. INS v. Lopex–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984). The protections as set forth in *Salerno* are not binding in this case.

■ Thus, because deportation proceedings are unlike those in the criminal context and because Congress has such broad discretion in controlling immigration law,

the test for determining the constitutionality of the statute at issue is simply whether it is based upon a " 'facially legitimate and bona fide reason.' " *See Fiallo v. Bell*, 430 U.S. at 794, 97 S.Ct. at 1479, quoting *Kleindienst v. Mandel*, 408 U.S. 753, 770, 92 S.Ct. 2576, 2585, 33 L.Ed.2d 683 (1972). Once a facially legitimate and bona fide reason is found, the court will neither look behind the exercise of discretion, nor test it by balancing its justification against the constitutional interest asserted by those challenging the statute. *See Fiallo*, 430 U.S. at 794–95, 97 S.Ct. at 1479–80. In light of these circumstances and in light of the mandate behind Congress's enacting this statute, the court finds that § 1252(a)(2) is founded on a legitimate and bona fide reason and is not unconstitutional.

It is evident on the face of the statute that Congress has determined that it will not tolerate the presence in this country of any alien, including a permanent resident such as Plaintiff, who has been convicted of an aggravated felony. *See* 8 U.S.C. § 1251(a)(4). This is particularly true in cases where drugs are involved. Within the past few years Congress has mounted an all out assault on drugs of which the immigration laws are clearly a part. Indeed, Congress has provided that an alien convicted of a drug trafficking crime is "conclusively presumed to be deportable from the United States." 8 U.S.C. § 1252a(c).

Consistent with this desire to legitimately protect this country from the criminal element through deportation, is the power to detain pending deportation. Just as Congress can determine that aliens with aggravated felony convictions shall be deported, so too can it make a provision for their detention without bond where it has determined they are a danger and menace to society. In *Carlson v. Landon*, 342 U.S. 524, 541–42, 72 S.Ct. 525, 534–35, 96 L.Ed. 547 the Supreme Court found that there was no denial of due process under the Fifth Amendment in the detention of alien communists without bail, pending determination of deportability, where there was reasonable cause to believe that their release on bail would endanger the safety and welfare of the United States. If there was no abuse of discretion in detaining alien communists in *Carlson*, it can hardly be improper for Congress, having determined that aliens convicted of aggravated felonies and particularly those convicted of serious drug offenses, are a danger to society, to direct the Attorney General to detain them pending deportation proceedings.

## II.  THE EIGHTH AMENDMENT

■  Plaintiff's second claim is that the use of the irrebuttable presumption in § 1252(a)(2) to deny bail in this case constitutes a violation of the bail clause of the Eighth Amendment. This claim is without merit.

The Supreme Court has recognized that the language of the Eighth Amendment does not dictate that all arrests are bailable. *See Carlson*, 342 U.S. at 546, 72 S.Ct. at 537. Moreover, there is no constitutional barrier to detaining potentially dangerous resident aliens pending deportation proceedings. *Salerno*, 481 U.S. at 748, 107 S.Ct. at 2101–02. Thus, the Supreme Court has found that the Attorney General's exercise of discretion to detain aliens without bail can only be overridden where it is clearly shown that the decision is without a "reasonable foundation." *Carlson*, 342 U.S. at 540–41, 72 S.Ct. at 534–35. Clearly, Congress had a reasonable basis for enacting the detention without bond provision in § 1252(a)(2).

In exercising it's plenary power over immigration decisions, Congress has determined that it is in the interest of the United States to expeditiously remove, and detain during the pendency of their deportation proceedings, aliens who have committed aggravated felonies. *See* 8 U.S.C. § 1252a. The decision to detain these criminal aliens is based on the reasonable assertion that they pose a threat to the safety and welfare of the citizens of the United States and are likely to abscond before the completion of the deportation proceedings. 134 Cong.Rec. § 14100 (daily ed., Oct. 3, 1988). Clearly there is a reasonable foundation to support the statute which obviates any Eighth Amendment concerns.

## APPLICATION OF THE STATUTE

■ Plaintiff's final challenge is to the actual application of § 1252(a)(2). Plaintiff contends that, because the provision states that an alien should be taken into custody upon completion of his "sentence," and because Plaintiff has not yet fulfilled his term of parole, it is improper to detain him at this time. This reading of the statute is unsupportable.

To argue that Congress wanted persons subject to detention to serve periods of parole without INS incarceration, goes against Congress's reasons for enacting the statute in the first place. The risk of a deportable alien absconding occurs as soon as he is released from incarceration and is not diminished by a period of parole. Congress certainly did not intend to end the absconding of aggravated felons by providing them with an additional opportunity to flee. The court will not interpret a statute in a way that leads to such an absurd result. *See Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1982).

In addition, the word "sentence" is nowhere defined in the Immigration Act. The BIA has noted that word 'sentence' in § 1252(a)(2) is not limited to one clear meaning and has concluded that the word refers to the period of incarceration or confinement ordered by the court. *See* BIA Dec. at 7. As that interpretation is reasonable, the court will not substitute any other construction for the meaning of the word. *See Perlera–Escovar v. Executive Office for Immigration Review*, 894 F.2d 1292, 1296 (11th Cir.1990) (A court cannot substitute its own construction for a "reasonable interpretation" made by the BIA). The court concludes that § 1252(a)(2) was properly invoked to detain Plaintiff upon completion of his term of incarceration.

For the foregoing reasons, the court finds it proper to grant summary judgment in favor of the defendant.

An appropriate order shall issue.