## Le Dinh TRAN

v.

## John B.Z. CAPLINGER, District Director, INS.

### Civ. No. 93–0422.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Dec. 27, 1993.

---

R. Travis Douglas, Ft. Smith, AR, for plaintiff.

John A. Broadwell, U.S. Attorney's Office, Shreveport, LA, for defendants.

## JUDGMENT

TRIMBLE, District Judge.

For the reasons stated in the Report and Recommendation of the Magistrate Judge previously filed herein and after an independent review of the record and a *de novo* determination of the issues, and having determined that the findings are correct under the applicable law; it is

ORDERED that Petitioner's application for writ of *Habeas Corpus* be and it is hereby DENIED.

## REPORT AND RECOMMENDATION

WILSON, United States Magistrate Judge.

Currently before this court is an application for Writ of *Habeas Corpus* filed pursuant to 28 U.S.C. § 2241 by *pro se* petitioner, Le Dinh Tran. This matter has been referred to the undersigned Magistrate Judge for review, report, and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

## FACTS

Petitioner is a native and citizen of Vietnam. He last entered the United States on or about September 29, 1983, as a refugee. His status was later adjusted to permanent resident alien, retroactive to the date of entry.

On December 19, 1990, Petitioner was convicted on his guilty plea of violating 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, Possession with Intent to Distribute Cocaine Hydrochloride, in the United States District Court for the Eastern District of Louisiana. He was sentenced to twelve months imprisonment, followed by a supervised release term of four years.

Petitioner was released to INS custody on September 20, 1991. On May 7, 1991, prior to the time that Petitioner came into INS custody, his bond was set by the INS at "no bond." This determination was reviewed by an Immigration Judge in a bond redetermination hearing held on September 25, 1991, at which time the Immigration Judge denied any change in custody status. A second bond redetermination hearing was held on October 28, 1991. On November 5, 1991, the Immigration Judge issued a decision, again denying any change in custody status. The Immigration Judge specifically noted that Tran had failed to overcome the presumption against his release by failing to prove that he was likely to appear for future hearings and that he was not a threat to the community. The Board of Immigration Appeals (BIA) affirmed this decision on November 29, 1991.

On March 13, 1991, an Order to Show Cause was issued against Petitioner, charging him with deportability pursuant to Sections 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the Immigration and Nationality Act [8 U.S.C. §§ 1251(a)(2)(B)(i) and 1251(a)(2)(A)(iii)] in that he had been convicted of a controlled substance violation. On February 3, 1992, an Immigration Judge found Petitioner deportable as charged, denied his request for Section 212(c) [8 U.S.C. § 1182(c)] waiver of deportation, and ordered his deportation to Vietnam. Both parties waived appeal, and the order of deportation became final.

In another attempt to have his custody status changed, Petitioner wrote to former INS Commissioner Gene McNary, requesting his release. By letter dated November 24, 1992, this request was denied by Joan C.

472

Higgins, Assistant Commissioner for Detention and Deportation. In the letter, she stated that

> The District Director in New Orleans has reviewed the circumstances of your continued detention and has determined that you remain in the custody of the INS until such time as a decision is reached whether or not you can be returned to your native Vietnam. I concur with the District Director.

On March 16, 1993, Petitioner filed the instant *habeas corpus* action seeking to have the court review his custody status. He currently claims that his continued detention is illegal in that he has been detained for a prolonged period of time following a final order of deportation.[1]

### LAW AND ANALYSIS

Narrowly framed, the issue before this court is whether an alien who has been convicted of an aggravated felony and who is under a final order of deportation may be indefinitely detained where deportation cannot be accomplished due to the lack of diplomatic relations between the United States and his native country. In order to resolve this issue, the court must determine whether such detention is permitted by statute, and, if so, whether the statute meets constitutional scrutiny.

### STATUTORY AUTHORITY

■ Petitioner argues that his detention is illegal in that he has been detained for more than six months following a final order of deportation. His argument is based upon the six month time limit that is present in 8 U.S.C. § 1252(c). 8 U.S.C. § 1252(c) states in pertinent part as follows:

> Final Order of Deportation; place of detention.

> When a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or, if judicial review is had, then from the date of the final order of the court within which to effect the alien's departure from the United States, during which period, at the Attorney General's discretion, the alien may be detained, released on bond in an amount and containing such conditions as the Attorney General may prescribe, or released on such other condition as the Attorney General may prescribe.

> ... If deportation has not been practicable, advisable, or possible, or departure of the alien from the United States under the order of deportation has not been effected within such six month period, the alien shall become subject to further supervision and detention pending eventual deportation as is authorized in this section....

However, the six month provision contained in 8 U.S.C. § 1252(c) is not applicable to Petitioner. For purposes of immigration law, Petitioner is classified as an aggravated felon because of his controlled substance violation. *See* 8 U.S.C. § 1101(43). Section 1252(a)(2) states as follows:

(A) The Attorney General shall take into custody any alien convicted of an aggravated felony upon release of the alien (regardless of whether or not such release is on parole, supervised release, or probation, and regardless of the possibility of rearrest or further confinement in respect of the same offense). Notwithstanding paragraph (1) or subsections (c) or (d) but subject to subparagraph (B), the Attorney General shall not release such felon from custody.

(B) The Attorney General may not release from custody any lawfully admitted alien who has been convicted of an aggravated felony, either before or after a determination of deportability, unless the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings.

This provision specifically provides that an alien convicted of an aggravated felony may not avail himself of the provisions in Section 1252(c). Thus, Congress has made it clear

---

1. Petitioner's final order of deportation was entered on February 3, 1992. Therefore, he has been in INS custody for over 22 months following a final order of deportation.

that the six month time limit is inapplicable to aliens such as Petitioner.

█ Section 1252(a)(2) creates a rebuttable presumption against the release of any alien who is convicted of an aggravated felony. *See Matter of Ellis,* 1993 WL 65657 (BIA 1993). Detention is required by 8 U.S.C. § 1252(a)(2)(A) unless the alien can rebut the presumption by successfully meeting the burden of proof set forth in 8 U.S.C. § 1252(a)(2)(B). *Id.* Deportable aliens, convicted of aggravated felonies, who are lawfully admitted have an opportunity to overcome the presumption against their release by presenting favorable evidence to an Immigration Judge in an individual bond hearing. In order to be eligible for release, an alien convicted of an aggravated felony must show that he is lawfully admitted, that he is not a threat to the community, and that he is likely to appear at any scheduled hearings. *Id.*

Recently, the Fifth Circuit held that "the [Immigration and Nationality Act] authorizes the Attorney General to continue to detain [excludable aliens], whether or not they have been convicted of aggravated felonies, until the United States is able to deport them." *Gisbert v. U.S. Attorney General,* 988 F.2d 1437, 1447 (5th Cir.1993). As part of their analysis, the Fifth Circuit concluded that although there is no express authority for indefinitely detaining excludable aliens who are aggravated felons, such authority is assumed by the language of 8 U.S.C. § 1226(e) [2]. *Gisbert, supra* at 1446. The court observed that 8 U.S.C. § 1226(e) is written as a limitation on the power of the Attorney General to release, not detain excludable aliens. *Gisbert, supra* at 1446.

This court finds that, like section 1226(e), section 1252(a)(2) is written as a limitation on the Attorney General's power to release deportable aliens who have been convicted of aggravated felonies, not as a limitation on the power to detain such aliens. The language of section 1252(a)(2)(A) clearly mandates detention: "The Attorney General *shall* take into custody any alien convicted of an aggravated felony upon release of the alien...." (emphasis added.) Section 1252(a)(2)(A) further states "Notwithstanding paragraph (1) or subsections (c) and (d) but subject to subparagraph (B), the Attorney General *shall not release* such felon from custody." (emphasis added.) Section 1252(a)(2)(B) also contains language which supports mandatory detention as it reads, "The Attorney General *may not release* from custody any lawfully admitted alien who has been convicted of an aggravated felony, either before or after a determination of deportability, *unless* the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before an scheduled hearings." (emphasis added.)

Congress has made provisions for expediting the deportation proceedings of aliens who are convicted of committing aggravated felonies. *see* 8 U.S.C. § 1252a. However, despite efforts to expeditiously deport aggravated felons, there are times when circumstances beyond the control of the Attorney General and her agents make immediate deportation impracticable, unadvisable, or impossible. When such delays occur, Congress has not expressly limited the power of the Attorney General to detain such aliens. Neither section 1252(a)(2) nor section 1252a places a time limit upon the period of detention. Clearly, Congress knows how to place time limits upon the period of detention if they had chosen to do so. *See* 8 U.S.C. § 1252(c).

█ Based upon the above analysis, this court finds that 8 U.S.C. § 1252(a)(2) man-

---

**2.** 8 U.S.C. § 1226(e)

(2) Notwithstanding any other provision of this section, the Attorney General shall not release such felon from custody unless the Attorney General determines that the alien may not be deported because of a condition described in 243(g) [8 U.S.C. § 1253(g)] exists.

(3) If the determination described in paragraph (2) has been made, the Attorney General may release such alien only after—

(A) a procedure for review of each request for relief under this subsection has been established,

(B) such procedure includes considerations of the severity of the felony committed by the alien, and

(C) the review concludes that the alien will not pose a danger to the safety of other persons or to property.

dates detention of aggravated felons who have not overcome the presumption against their release. The mandatory language and the absence of a time limit on detention lead this court to conclude that indefinite detention of deportable aliens who are aggravated felons is statutorily authorized when immediate deportation is not possible and the alien has not overcome the presumption against his release.

### CONSTITUTIONAL CHALLENGE

While the court finds that there is statutory authority allowing the indefinite detention of an alien who is classified as an aggravated felon under immigration law where the alien is unable to overcome the presumption which is established by 8 U.S.C. § 1252(a)(2), it is unclear how long this detention can continue without becoming violative of an alien's constitutional rights. Therefore, it is necessary for this court to analyze Petitioner's detention in light of his constitutional challenges to determine whether Petitioner's detention has continued beyond permissible constitutional limitations.

### DUE PROCESS

The Fifth and Fourteenth Amendments to the U.S. Constitution proscribe the deprivation of "life, liberty or property without due process of law." Due process analysis has both substantive and procedural components.

### SUBSTANTIVE DUE PROCESS

■ The substantive component protects individual liberty against "certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. Harker Heights*, —— U.S. ——, ——, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992), *quoting Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). This prevents the government from engaging in conduct that "shocks the conscience" or interferes with rights implicit in the concept of ordered liberty. *U.S. v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987).

The Supreme Court has expressed its reluctance to expand the concept of substantive due process "because the guideposts for responsible decision-making in this uncharted area are scarce and open-ended." *Collins, supra,* —— U.S. at ——, 112 S.Ct. at 1068. Accordingly, the court has directed the "exercise of utmost care" when a party seeks to break new ground in the area of substantive due process rights. id. The lack of concrete guidelines for decision-making is evident in the present case.

The substantive component of due process prohibits the government from impinging on "fundamental" liberty interests "unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores,* —— U.S. ——, ——, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993); *Collins v. Harker Heights, supra,* —— U.S. at ——, 112 S.Ct. at 1068. Where such fundamental rights are not involved, government action is judged by "the (unexacting) standard of rationally advancing some legitimate government purpose." *Reno v. Flores, supra,* —— U.S. at ——, 113 S.Ct. at 1449. Obviously, it is important that the liberty interest asserted be carefully described at the outset so that a determination can be made as to whether it is "fundamental." *Reno v. Flores, supra,* —— U.S. at ——, 113 S.Ct. at 1447. Here, that it is no easy task. It may be that a legal alien has a fundamental right not to be detained as the result of "arbitrary governmental action." *See Reno v. Flores, supra,* —— U.S. at ——, 113 S.Ct. at 1454 (J. O'Conner, concurring). However, such a right would not be implicated in this case. Petitioner's detention does not result from "arbitrary government action."

The provisions of Section 1252(a)(2) which have resulted in Petitioner's detention were designed to serve legitimate and compelling governmental interests. The obvious purposes behind this provision are the protection of the community against danger and the prevention of aliens from absconding before their deportation can be completed. The government's interest in safeguarding the community is both legitimate and compelling. *U.S. v. Salerno, supra,* 481 U.S. at 749, 107 S.Ct. at 2103; *Schall v. Martin,* 467 U.S. 253, 2410, 104 S.Ct. 2403, 2411, 81 L.Ed.2d 207 (1984). This interest is sufficient to justify detention of an alien. *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547

(1952). Detention in order to insure that the petitioner will not abscond also serves a legitimate governmental interest. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Accordingly, this court concludes that a broad right to be free of detention as the result of arbitrary government action is not implicated in the present case. *See also Reno v. Flores, supra.* Further, heeding the Supreme Court's directive to use restraint in this area, this court is not prepared to hold that an alien has a fundamental right to be free of detention pending his deportation after having been convicted of an aggravated felony.

Thus, this court's substantive due process analysis focuses on whether the detention is imposed for the purpose of punishment or whether the detention is merely incidental to another legitimate governmental purpose. *See Gisbert, supra* at 1441. "Absent a showing of an express intent to punish on the part of [the government], that determination generally will turn on 'whether an alternative purpose to which [the detention] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Schall v. Martin, supra,* 467 U.S. at 269, 104 S.Ct. at 2412, *quoting Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 167–68, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963). "Thus, if a particular condition or restriction of … detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell v. Wolfish, supra,* 441 U.S. at 538, 99 S.Ct. at 1874.

The legislative history and text of Section 1252 clearly show that Congress did not provide for detention of aliens convicted of aggravated felonies as a means of punishment. Section 1252(a)(2)(B) provides for the release of a lawfully admitted alien who has been convicted of an aggravated felony where the alien has demonstrated that he is neither a

threat to others nor a flight risk. As noted previously, it is clear that the purpose for detention is to protect the community and also to prevent aliens from absconding before deportation. Thus, the question of whether Petitioner's detention complies with substantive due process ultimately turns on whether the detention in Petitioner's case is excessive in relation to the goals of Congress.

As already noted the goal of protecting the community is a compelling one. Where, as here, an alien is involved the interest of Congress is heightened. Congress and the executive branch bear the responsibility of regulating the relationship between the United States and aliens. *Reno v. Flores, supra,* — U.S. at ——, 113 S.Ct. at 1449. "Over no conceivable subject is the legislative power more complete." *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977), *quoting Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320, 338, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909). In the exercise of this responsibility Congress can and does make rules which would be unacceptable if applied to U.S. citizens. *Reno v. Flores, supra; Mathews v. Diaz,* 426 U.S. 67, 78, 96 S.Ct. 1883, 1891, 48 L.Ed.2d 478 (1976).

Additionally, Section 1252(a)(2) is limited to aliens who have already been judicially determined to have committed an aggravated felony. Aggravated felonies are crimes selected by Congress as being particularly serious and as significantly implicating the safety of the community. Moreover, Section 1252(a)(2)(B) provides a lawful alien with the opportunity of being released if he can demonstrate that he is neither a danger to the community nor a flight risk.[3]

The particularly troublesome aspect of Petitioner's detention is its duration to date and its indefinite duration in the future. In *U.S. v. Hare,* 873 F.2d 796 (5th Cir.1989), the

---

**3.** As originally enacted § 1252(a)(2) provided no opportunity for a case by case review of the detention of aliens who had been convicted of an aggravated felony. This was the primary reason given by a number of courts for holding § 1252(a)(2) unconstitutional. *Paxton v. INS,* 745 F.Supp. 1261 (E.D.Mich.1990); *Leader v. Blackman,* 744 F.Supp. 500 (S.D.N.Y.1990);

*Agunobi v. Thornburgh,* 745 F.Supp. 533 (N.D.Ill. 1990). *Kellman v. District Director, INS,* 750 F.Supp. 625 (S.D.N.Y.1990). *Probert v. INS,* 750 F.Supp. 252 (E.D.Mich.1990); but *compare Morrobel v. Thornburgh,* 744 F.Supp. 725 (E.D.Va. 1990); and *Davis v. Weiss,* 749 F.Supp. 47 (D.Conn.1990). In 1990 § 1252(a)(2)(B) was added.

court addressed the issue of whether the duration of pre-trial detention under the Bail Reform Act, 18 U.S.C. § 3141 et seq., violated the due process clause. In that context, the court indicated that there was a due process limit on the length of detention which must be determined on a case by case basis. However, in *Gisbert,* the Fifth Circuit concluded that the indefinite detention of an excludable alien was not excessive in relation to the purposes served. *Gisbert, supra* at 1442.

This court recognizes that, as a general rule, excludable aliens are not entitled to the same constitutional protections as resident aliens. *Gisbert, supra* at 1442 n. 8. However, the governmental purposes for the detention of the excludable aliens in *Gisbert* are the very same governmental purposes sought to be served by Section 1252(a)(2). Other than the fact that *Gisbert* dealt with an excludable alien whereas Petitioner is a deportable alien under a final order of deportation, the considerations involved in the present case are virtually identical to those in *Gisbert.* This court can find no logical basis to conclude that the detention of a deportable alien under these circumstances is "punishment" while the detention of an excludable alien is not. Accordingly, the court finds that the detention of Petitioner is not punishment and does not constitute a violation of Petitioner's right to substantive due process.

## PROCEDURAL DUE PROCESS

■ The procedural component of due process "guarantees only that there is a fair decision-making process before the government takes some action directly impairing a persons life, liberty or property." Rotunda and Nowak, *Treatise on Constitutional Law: Substance and Procedure,* 2d (hereafter Rotunda and Nowak) Section 14.6. *See also Collins v. Harker Heights, supra; U.S. v. Salerno, supra.* This ensures that the procedures used by the government are fundamentally fair. Before beginning the analysis of the procedures used in the bond determination process, the court notes that deportation proceedings are civil in nature, therefore, they require fewer procedural due process protections than criminal proceedings. *Immigration & Naturalization Service v.*

*Lopez–Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984); *Jean v. Nelson,* 727 F.2d 957, 974 (11th Cir.1984).

Petitioner's procedural due process challenge is founded upon his belief that "the determination 'that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings' is made without any established guidelines or regulations and is at the complete and uncontrolled judgment of the INS agent, Immigration Judge, or the BIA." (Petitioner's brief, Docket item 13, p. 6). The respondent argues that Petitioner's right to procedural due process has not been violated because he was given a detention hearing before an Immigration Judge and allowed to appeal his detention to the BIA.

Although Petitioner was afforded a hearing, Petitioner argues that the hearing did not provide him with the required due process because there are no guidelines under which these types of hearings are conducted. Therefore, this court must determine whether the detention hearing before the Immigration Judge and the review by the BIA provided Petitioner with the necessary procedural safeguards.

Under the current statutory scheme, 8 U.S.C. § 1252(a) grants the Attorney General the authority to take the alien into custody pending a final determination of deportability. Specifically, 8 U.S.C. § 1252(a)(1) provides that

Pending a determination of deportability in the case of any alien as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody. Except as provided in paragraph (2), any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (A) be continued in custody; or (B) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (C) be released on conditional parole.

However, in the case of an aggravated felon, such as Petitioner, the Attorney General's discretion is limited by Congress. 8 U.S.C. § 1252(a)(2). The provision relating to aliens who have been convicted of aggravated felonies provides that

The Attorney General *may not* release from custody any lawfully admitted alien who has been convicted of an aggravated felony, either before or after a determination of deportability, *unless* the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings. 8 U.S.C. § 1252(a)(2)(B)

Accordingly, if the alien is charged with deportability on the basis of an offense which is an aggravated felony for immigration purposes, the burden is placed upon the alien detainee to prove that he is not a threat to society and that he is not a flight risk.

The initial determination of whether detention or release is indicated is made by the INS through the District Director or any other agent authorized by 8 CFR § 242.2(c). The alien receives written notice of this decision. If the decision is unfavorable, the alien may request a redetermination by an Immigration Judge. 8 CFR § 242.2(d). For an alien who is detained, the application for redetermination may be made at any time before the deportation order becomes administratively final. The Immigration Judge conducts an informal hearing on the bond issue and then files written reasons for his decision. Following a bond hearing, the alien can reserve the right to appeal the decision to the BIA. The BIA reviews the entire bail record of the alien, including the Immigration Judge's memorandum and any other information which may be helpful to the BIA. As an additional means of review, the alien may file a petition for writ of *habeas corpus* with the federal district court by which the court can review the Attorney General's orders regarding detention "upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with ... reasonable dispatch ..." 8 U.S.C. § 1252(a). In addition to the procedures discussed above, the alien is also entitled to seek discretionary relief from the District Director following an order of deportation which is administratively final. 8 CFR § 242.2(d).

In the case presently before the court, the petitioner was afforded two bond hearings before the Immigration Judge and he appealed to the BIA. Both the Immigration Judge and the BIA specifically found that Petitioner had failed to establish that he does not present a danger to society. Additionally, Petitioner sought relief from the District Director which was denied. *see* Government Exhibit 11.

The court finds that, under the Supreme Court test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the procedures utilized by the INS satisfy the procedural due process requirements of the Fifth Amendment. The petitioner is provided with an individual bond hearing and custody determination.[4] Furthermore, there are several levels of review available to him following an unfavorable bond and/or custody determination.

Petitioner does not seem to seriously dispute the fact that sufficient procedures are in place. However, he does argue that the procedures do not provide him with meaningful review because the determinations of the reviewing bodies are not subject to guidelines. While the court concedes that the decisions regarding bond are discretionary, the court does not find that the decisions are arbitrary and without guidance.

Custody determinations concerning aliens subject to deportation are an important feature of the Attorney General's discretionary power. Gordon and Mailman, *Immigration*

---

4. This court has not found any cases since the 1990 amendment which directly address whether the procedures governing the custody of aggravated felons in deportation proceedings comport with due process. However, the courts which addressed this issue prior to the revision and found that it violated an alien's procedural due process rights focused on the fact that 8 U.S.C. § 1252(a)(2)(B) provided a blanket prohibition against the release of any alien who had been convicted of an aggravated felony, without the opportunity for individual hearings. *see* cases cited in footnote 3, *supra.* .

*Law and Procedure,* § 81.09[3][a]. Therefore, the courts must give deference to the decisions of the Attorney General and her agents. However, the discretion of the Attorney General and her agents is not without limits. As another court has observed,

> Broad as the BIA's discretion is, that tribunal may not act arbitrarily or irrationally. It may not proceed at whim, shedding grace unevenly from case to case. It must explain departures from settled policies.... and may not unaccountably disregard on one day considerations it held relevant on another day.

*Shin v. INS,* 750 F.2d. 122, 125 (D.C.Cir. 1984) (citations omitted.)

In determining the necessity for and the amount of bond, the BIA has found it appropriate to consider such factors as a stable employment history, the length of residence in the community, the existence of family ties, a record of nonappearance at court proceedings, and previous criminal or immigration law violations. *see Matter of Patel,* 15 I & N Dec. 666 (BIA 1976); *Matter of Shaw,* 17 I & N Dec. 177 (BIA 1979); *Matter of Sugay,* 17 I & N Dec. 637 (BIA 1981); *Matter of San Martin,* 15 I & N Dec. 167 (BIA 1974); *Matter of Andrade,* 19 I & N Dec. 488 (BIA 1987). An alien who is more likely to be awarded relief from deportation is considered more likely to appear for deportation proceedings than one who is unlikely to be awarded relief. *see Matter of Andrade, supra.* The record reveals that both the Immigration Judge and the BIA considered these factors when they decided, in their respective decisions, that Petitioner had not overcome the presumption against his release. *see* Government Exhibits 10 and 11. Accordingly, this court finds that the guidelines established by the BIA for making a bond determination, the hearing before the Immigration Judge, the appeal to the BIA, the opportunity for discretionary relief from the District Director, and the chance for *habeas corpus* review by the court, provide alien detainees with procedural due process which satisfies the constitutional mandates of the Fifth Amendment.

## EQUAL PROTECTION

Aliens do not receive the constitutional guarantees which by their terms refer to "citizens", however aliens are protected by the constitutional provisions which refer to "persons." Therefore, aliens are protected by the Fifth Amendment Due Process clause and the Fourteenth Amendment Due Process and Equal Protection clauses. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). While the Fourteenth Amendment Equal Protection Clause does not apply to the federal government, the Fifth Amendment Due Process clause guarantees equal application of federal laws. *id.*

■ However, the Supreme Court has recognized that laws relating to aliens do not automatically violate equal protection merely because the law treats a class of aliens differently from another class of aliens or from United States citizens. *see Reno v. Flores, supra,* —— U.S. at ——, 113 S.Ct. at 1449 (Releasing juvenile aliens with close relatives or legal guardians but detaining those without does not violate the equal protection guaranty.); *United States v. Verdugo–Urquidez,* 494 U.S. 259, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990) (Different treatment between aliens and citizens under the Fourth Amendment did not violate the equal protection guaranty.). A court should analyze the reasons for the disparate treatment when determining whether the law can withstand an equal protection challenge.

■ Generally, the equal protection analysis is conducted under a deferential standard which requires only a rational relationship between the classification at issue and the legitimate governmental interest which it seeks to further. However, when a fundamental right or a suspect classification are involved, strict scrutiny is required.

■ The court has already determined that a fundamental right is not implicated in this case. *see* Substantive Due Process section, *supra.* Furthermore, alien classifications are not suspect classifications because Congress has virtually unrestricted power over matters related to aliens, such as immigration and deportation. *See Reno v. Flores, supra,* —— U.S. at ——, 113 S.Ct. at 1449;

*Fiallo v. Bell, supra;  Mathews v. Diaz, supra;*  Rotunda and Nowak, Section 18.11. Additionally, this court has determined that Petitioner's detention is not excessive in relation to the purpose for it.  *see* Substantive Due Process section, *supra.*  Accordingly, it necessarily follows that there is a rational relationship between Petitioner's detention and the governmental interests that this detention seeks to further.

### *EXCESS BAIL CLAUSE OF THE EIGHTH AMENDMENT*

█ Petitioner also asserts that his detention in this case violates the excessive bail clause of the Eighth Amendment.[5]  The Eighth Amendment simply provides that "[e]xcessive bail shall not be required." However, it is clear that bail is not required in all cases.  *U.S. v. Salerno, supra,* 481 U.S. at 751–53, 107 S.Ct. at 2104–05;  *Carlson v. Landon, supra,* 342 U.S. at 543–45, 72 S.Ct. at 536–37.

In *Carlson v. Landon,* the Supreme Court specifically found that the Eighth Amendment did not require bail in the case of aliens where there was a reasonable apprehension of danger to others.  *Carlson v. Landon, supra,* 342 U.S. at 545, 72 S.Ct. at 537.

In *U.S. v. Salerno,* the Court was considering the constitutionality of the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*  In upholding the provisions of providing for detention under the Bail Reform Act without bail, the court stated: "We believe that when Congress has mandated detention on the basis of a compelling interest other than prevention of flight, as it has here, the Eighth Amendment does not require release on bail."  *U.S. v. Salerno, supra,* 481 U.S. at 753, 107 S.Ct. at 2105.  The compelling interest that the Supreme Court was referring to was the interest in the safety of others. That same compelling interest is implicated in Section 1252(a)(2).  Accordingly, the Eighth Amendment does not require that Petitioner be released on bail.

*CONCLUSION*

This court finds that there is statutory authority for detaining aggravated felons indefinitely when they cannot overcome the presumption against their release which is established by 8 U.S.C. § 1252.  Additionally, this court finds that this prolonged and indefinite detention does not violate the constitutional guarantees of substantive due process, procedural due process, equal protection, or the Eighth Amendment prohibition of excessive bail.

ACCORDINGLY,

IT IS RECOMMENDED that Petitioner's application for writ of *Habeas Corpus* be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS ON APPEAL.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 6th day of December, 1993.

5. Although this court will address the merits of the Eighth Amendment claim, it notes that it is questionable whether the Eighth Amendment is even applicable in this case.  Petitioner's current detention is a result of deportation proceedings and not criminal proceedings, and the Fifth Circuit has held that the Eighth Amendment does not apply in such cases.  *Equan v. United States INS,* 844 F.2d. 276, 279 (5th Cir.1988); *Bamidele v. Gerson,* 995 F.2d 223 (Table) (5th Cir.1993).