**Mario J. VILLAFUERTE**

v.

**UNITED STATES IMMIGRATION & NATURALIZATION SERVICE.**

No. Civ.A. 99–1301.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Oct. 20, 1999.

Mario J. Villafuerte, Lake Charles, LA, for plaintiff pro se.

## JUDGMENT

TRIMBLE, District Judge.

For the reasons stated in the Report and Recommendation of the Magistrate Judge previously filed herein and after an independent review of the record, and a *de novo* determination of the issues, and consideration of the objections filed herein, and having determined that the findings are correct under applicable law; it is

**ORDERED** that this petition be **DENIED AND DISMISSED.**

1. 8 U.S.C. § 1231(a)(1).

## REPORT AND RECOMMENDATION

WILSON, United States Magistrate Judge.

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report, and recommendation.

## FACTUAL BACKGROUND

Before the court is a petition for writ of *habeas corpus* filed by *pro se* petitioner, Mario J. Villafuerte, on July 19, 1999. Petitioner is currently detained by the Immigration and Naturalization Service at the Calcasieu Sheriff's Prison in Lake Charles, Louisiana. Petitioner names the Immigration and Naturalization Service (INS) as respondent.

Petitioner is a native and citizen of Cuba. On an unspecified date, Petitioner was convicted of a criminal violation. As a result of his criminal conviction, the INS ordered Petitioner deported/removed to Cuba in 1995. Petitioner admits that the order is final.

Petitioner states that he has been in INS custody for ten months and that the INS has failed to deport him. He further complains that he has been detained past the statutory ninety day removal period under current law [1] and six month period under prior law [2]. Thus, he asserts that he has been subjected to permanent indefinite detention because Cuba has not yet agreed to accept Petitioner. Additionally, he asserts that "10 months is enough time to determine whether, or not he can be removed . . . ."

Petitioner does not challenge his order of removal. Moreover, petitioner does not request a stay of the order of his removal. Rather, his sole challenge is that he is being subjected to indefinite detention which allegedly violates his constitutional rights. This contention is based upon petitioner's belief that his deportation to Cuba

2. Petitioner is referring to former U.S.C. § 1252(c) which has been repealed.

will not be effected in the near future due to poor diplomatic relations between the United States and Cuba. Petitioner seeks his immediate release from custody under supervised release.

After reviewing the entire record herein and applicable jurisprudence, the undersigned finds that this petition should be **DENIED AND DISMISSED.**

### *LAW AND ANALYSIS*

Petitioner argues that his detention is unconstitutional because the statute under which he is detained allows for the indefinite and permanent detention of aliens, like him, who are under final orders of deportation but who cannot be deported because their countries refuse to allow the repatriation of their nationals.

Petitioner's order of deportation was final in 1995, prior to the enactment of either AEDPA or IIRIRA. Nevertheless, under recent Fifth Circuit jurisprudence, it seems that the provisions of § 241 of the INA[3], as amended by IIRIRA, govern Petitioner's detention. *Zadvydas v. Underdown,* 185 F.3d 279, 285–87 (5th Cir. 1999). Additionally, the INA as amended by the permanent provisions of IIRIRA govern judicial review of Petitioner's claims. It is these provisions which the court must now examine in order to determine whether there is jurisdiction to consider Petitioner's challenge to the constitutionality of his detention.

### A. Jurisdiction

■ Congress has clearly indicated that it desires minimal judicial intrusion into deportation decisions. Judicial review of immigration matters is expressly limited by § 242(g) of the INA[4] which provides as follows:

**3.** 8 U.S.C. § 1231.

**4.** 8 U.S.C. § 1252(g).

**5.** To the extent that *Naidoo v. INS,* 39 F.Supp.2d 755 (W.D.La.1999) suggests a different result, that decision is modified in ac-

Exclusive Jurisdiction

Except as provided in [§ 242 of the INA] and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The United States Supreme Court has recently construed the jurisdictional effect of § 242(g) in *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999). Although the Supreme Court did not pronounce definite boundaries for judicial review, the court did make clear that § 242(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *American–Arab* at 943. In a recent Fifth Circuit case, the court held that § 242(g) "did not remove federal court jurisdiction to hear a section 2241 habeas petition challenging the validity of the statutes authorizing detention of aliens." *Zadvydas,* 185 F.3d at 285. This is so "because the detention, while intimately related to efforts to deport, is not itself a decision to 'execute removal orders' and thus does not implicate section 1252(g) under *Reno." Id.* citing *Parra v. Perryman,* 172 F.3d 954, 957 (7th Cir.1999). Accordingly, under the *Zadvydas* reasoning, this court has jurisdiction to review petitioner's challenge to the constitutionality of the statute under which he is detained.[5]

### B. Constitutionality of Statutorily Authorized Prolonged Detention

cordance with *Zadvydas.* However, the undersigned notes that *Naidoo* did not present a challenge to post deportation detention, but rather was a challenge to the order of deportation. This court has consistently held that it lacks jurisdiction to hear such challenges.

■ Section 241(a)(6) of the INA[6] provides for the detention of certain criminal aliens beyond the 90 day removal period. Petitioner alleges that such prolonged detention violates the Constitution because it essentially results in the imposition of a life sentence in jail as a consequence of an alien's immigration status.

However, under binding Fifth Circuit jurisprudence, Petitioner's challenge to the constitutionality of his statutorily authorized indefinite detention lacks merit. *Gisbert v. Attorney General*, 988 F.2d 1437 (5th Cir.1993); *Zadvydas, supra*. In *Gisbert*, a group of Mariel Cubans, who had been ordered excluded from the United States and denied discretionary parole release, challenged their indefinite detention by the INS as unconstitutional. The court held that the detention was constitutional and specifically that the detention did not constitute punishment or a violation of any substantive or procedural due process rights. In so holding, the court stated as follows:

> the INA authorizes the Attorney General to continue to detain petitioners, whether or not they have been convicted of aggravated felonies, until the United States is able to deport them.... They want to be admitted physically into the United States.... This would, in effect, bestow on these aliens the very rights that were denied them when their immigration parol was revoked on the basis of their criminal activity in the United States.... The United States cannot be forced to violate its national sovereignty in order to parole these aliens within its borders merely because Cuba is dragging its feet in repatriating them. *Id.* at 1447.

In *Zadvydas v. Underdown*, 185 F.3d 279 (5th Cir.1999), the Fifth Circuit found the reasoning in *Gisbert* applicable to resident aliens. In so holding, the *Zadvydas* court explained *Gisbert* as follows:

> [The petitioners in *Gisbert*] emphasized the fact that in light of Castro's refusal to accept their deportation, their confinement was potentially indefinite. [However, the Fifth Circuit] rejected these arguments and held that the continued, indefinite detention of the aliens did not violate their constitutional rights. In reaching this result, [the court] relied upon the [United States Supreme] Court's decision in *Mezei*, in which [the Court] allowed the indefinite detention of an excludable alien who had been ordered permanently excluded and could find no nation to receive him. Drawing on the reasoning in *Mezei*, [the court] found that detention pending deportation does not constitute punishment, since the detention could rationally be seen as a necessary byproduct of the need to expel an unwanted alien rather than a punitive decision. The continued detention of [the] Mariel Cubans thus did not constitute punishment without trial in violation of the aliens' substantive due process rights, even though there was no guarantee that deportation could be effectuated in the near future.

*Zadvydas*, 185 F.3d at 290 citing *Gisbert* and *Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956. Finding no difference between excludable aliens and resident aliens with respect to their detention following a final and unchallenged decision to deport, the court held that no "no radical departure from the reasoning of *Gisbert*" was mandated. *Zadvydas*, 185 F.3d at 290, 297.

**6.** 8 U.S.C. § 1231(a)(6) provides in pertinent part as follows:

**Inadmissible or criminal aliens**

An alien ordered removed who is inadmissible under section 212 [8 U.S.C. § 1182], removable under section 237(a)(1)(C) [8 U.S.C. § 1227(a)(1)(C) ], 237(a)(2) [8 U.S.C. § 1227(a)(2) ], or

237(a)(4) [8 U.S.C. § 1227(a)(4) ] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period, and if released, shall be subject to the terms of supervision in paragraph (3).

Moreover, the *Zadvydas* court found that the detention authorized by § 241(a)(6) of the INA is not necessarily permanent or indefinite. *Zadvydas,* 185 F.3d at 291–92. This was so because both § 241(a)(6) of the INA and corresponding INS regulations, 8 C.F.R. § 236.1(d)(2)(ii), 236.1(d)(3)(iii), 241.4 and 241.5, as explained in the "Pearson Memorandum"[7], authorize the release of detained aliens under certain circumstances. Aliens detained under § 241(a)(6) are entitled to periodic review, the opportunity to present evidence in favor of release, and the right to appeal to the BIA the denial of a written request for release. *Zadvydas,* 185 F.3d at 286–87.

The same is true under binding jurisprudence of this court. *Tran v. Caplinger,* 847 F.Supp. 469 (W.D.La.1993). In *Tran,* the petitioner had been ordered deported to Vietnam as a result of his conviction for an aggravated felony. He complained that he was being illegally subjected to continued indefinite detention because his deportation could not be arranged due to poor diplomatic relations with his native country. By analogy to *Gisbert,* this court held that the continued indefinite detention of deportable aliens convicted of aggravated felonies is not illegal or unconstitutional as "the governmental purposes for the detention of excludable aliens in *Gisbert* are the very same governmental purposes sought to be served by [the former INA section concerning deportable aliens]." *Tran,* 847 F.Supp. at 476. Indeed, this court recognized that "[o]ther than the fact that *Gisbert* dealt with an excludable alien whereas [Tran] is a deportable alien under a final order of deportation, the considerations involved … are virtually identical…." *Id.* Thus, this court found no logical basis to conclude that the indefinite detention of a deportable alien was unconstitutional.

Petitioner, like the aliens in *Gisbert, Zadvydas* and *Tran,* complains that his country will not repatriate him, and accordingly, he should be released from detention. However, in light of concerns for national sovereignty, INS policy, and recent case law, this court finds that § 241(a)(6) of the INA, which authorizes the detention of an alien beyond the 90 day removal period, is not unconstitutional. *See also Zadvydas,* 185 F.3d at 294.

## C. Discretionary Decision to Deny Supervised Release

Petitioner complains that the Attorney General has denied his request for supervised release. To the extent Petitioner seeks to have the court review the Attorney General's discretionary decision to deny him release from detention while awaiting deportation, this court lacks jurisdiction to do so.

The Attorney General's decision regarding petitioner's detention ·or relief from detention is a matter within her discretion. Under the current immigration law, this court is specifically divested of jurisdiction to review discretionary decisions of the Attorney General. *See* 8 U.S.C. § 1252(a)(2)(B)(ii)[8]. Thus, any such decision is not subject to judicial review.

---

**7.** February 3, 1999 "Memorandum For Regional Directors" from INS Executive Associate Commissioner Michael A. Pearson concerning "Detention Procedures for Aliens Whose Immediate Repatriation Is Not Possible or Practicable." *See Zadvydas,* 185 F.3d at 287, n. 9.

**8.** 8 U.S.C. § 1252(a)(2)(B) states in pertinent part as follows:

Notwithstanding any other provision of law, no court shall have jurisdiction to review—
...

(ii) any decision or action of the Attorney General the authority for which is specified under this chapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

See also *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 945, 142 L.Ed.2d 940 (1999) (noting that 8 U.S.C. § 1252(a)(2)(B) which bars judicial review of denials of discretionary relief authorized by various statutory provisions is "aimed at protecting the Executive's discretion from the courts….").

For the foregoing reasons, **IT IS REC-OMMENDED** that this petition be **DE-NIED AND DISMISSED.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OB-JECTIONS TO THE PROPOSED FIND-INGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITH-IN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED–TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

August 26, 1999.